**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KELSEY HIRMER, individually and on behalf of all others similarly situated, | ) )  | |
| | ) | Case No. 22-cv-01018 |
| *Plaintiff,* | ) ) | |
| | ) | Hon. LaShonda A. Hunt. |
| v. | ) ) | Presiding Judge |
| | ) | |
| ESO SOLUTIONS, INC. d/b/a ECORE SOLUTIONS, INC., | ) ) | |
| | ) | |
| *Defendant.* | ) ) | |

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND SUPPORTING MEMORANDUM**

170849

## TABLE OF CONTENTS

I.        **INTRODUCTION**................................................................................................1

II.       **RELEVANT BACKGROUND**........................................................................2

     A.    The Biometric Information Privacy Act........................................2

     B.    The alleged BIPA violations ...........................................................2

     C.    Procedural History ...........................................................................3

     D.    The proposed Settlement .................................................................5

          1.    The Settlement Class ...........................................................5

          2.    Monetary relief for Settlement Class Members.....................5

          3.    Prospective relief .................................................................6

          4.    *Cy pres* distributions...........................................................7

          5.    Settlement Class release ......................................................9

          6.    Class Representative Service Award....................................10

          7.    Attorneys' fees and costs....................................................10

          8.    Administration and Notice .................................................11

III.      **ARGUMENT**.....................................................................................................12

     A.    The settlement approval process ...................................................12

     B.    The Settlement warrants preliminary approval .............................13

          1.    The Class has been adequately represented.........................13

          2.    The Settlement resulted from arm's length negotiations....................14

          3.    The proposed Settlement treats Settlement Class Members equally..15

          4.    The relief provided to the Settlement Class is more than adequate ...16

i

a.    The risks of continued litigation weigh, when viewed against the relief provided, weigh in favor of approval ......................17

b.    The proposed method of distribution is effective ..................19

c.    The proposed attorney fee award and timing of payment support preliminary approval .................................................20

C.    The Settlement Class should be certified for settlement purposes only .........21

1.    The Settlement Class is sufficiently numerous .................................22

2.    Plaintiff's claims are typical ...............................................................22

3.    Plaintiff and Counsel are adequate ....................................................23

4.    Commonality is satisfied ....................................................................23

5.    Common questions predominate .........................................................24

6.    A class action is the superior means of resolving this dispute ..........25

7.    The Settlement Class is ascertainable.................................................26

D.    The proposed Notice plan is constitutionally sound......................................27

**IV.    CONCLUSION ........................................................................................28**

# **TABLE OF AUTHORITIES**

## **Cases**

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.,*
No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) .................................. 19

*Amchem Prods. v. Windsor,*
521 U.S. 591 (1997).............................................................................................. 21, 26

*Aranda v. Caribbean Cruise Line, Inc.,*
No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400 (N.D. Ill. Mar. 2, 2017) ................................. 15

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee,*
616 F.2d 305 (7th Cir. 1980) ........................................................................................ 12

*Barnes v. Air Line Pilots Ass'n,*
310 F.R.D. 551 (N.D. Ill. 2015).............................................................................. 25, 26

*Beaton v. SpeedyPC Software,*
907 F.3d 1018 (7th Cir. 2018) ..................................................................................... 22

*Birchmeier v. Caribbean Cruise Line, Inc.,*
896 F.3d 792 (7th Cir. 2018) ........................................................................... 1, 10, 21

*Felzen v. Andreas,*
134 F.3d 873 (7th Cir. 1998) ....................................................................................... 12

*Fournigault v. Independence One Mortgage Corp.,*
234 F.R.D. 641(N.D. Ill. 2006)..................................................................................... 13

*Gaskill v. Gordon,*
160 F.3d 361 (7th Cir. 1998) ....................................................................................... 10

*Goldsmith v. Technology Solutions Co.,*
No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995) .......................... 12, 19

*Golon v. Ohio Savs. Bank,*
No. 98-cv-7430, 1999 WL 965593 (N.D. Ill. Oct. 15, 1999) .................................................. 24

*Hale v. State Farm Mut. Auto. Ins. Co.,*
No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018)........................ 20

*In re AT&T Mobility Wireless Data Servs. Sales Litig.,*
270 F.R.D. 330 (N.D. Ill. 2010).................................................................................... 16

*In re Facebook Biometric Info. Privacy Litig.*,
  326 F.R.D. 535 (N.D. Cal. 2018) .................................................................................. 24, 25

*In re Google LLC Street View Electronic Communications Litigation*,
  No. 3:10-md-02184, 2020 U.S. Dist. LEXIS 47928 (N.D. Cal. Mar. 18, 2020) ..................... 17

*In re Lupron Marketing & Sales Practices Litigation,*
  677 F.3d 21 (1st Cir. 2012) ......................................................................................... 7

*In re Southwest Airlines Voucher Litig.*,
  No. 11-cv-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ............................................. 18

*Ira Holtzman, C.P.A., & Assocs. v. Turza*,
  728 F.3d 682 (7th Cir. 2013) ..................................................................................... 7, 9

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ..................................................................................... 12

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ..................................................................................... 10

*Klier v. Elf Atochem North America, Inc.*,
  658 F.3d 468 (5th Cir. 2011) ..................................................................................... 7

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) ............................................................................. 10, 20

*Kurgan v. Chiro One Wellness Ctrs. LLC*,
  No. 10-cv-1899, 2014 U.S. Dist. LEXIS 20255 (N.D. Ill. Feb. 19, 2014) .............................. 25

*Kusinski v. ADP, LLC*,
  No. 2017-CH-12364 (Cook Cnty. Feb. 10, 2021) ........................................................... 16

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ..................................................................................... 17

*Langendorf v. Skinnygirl Cocktails, LLC*,
  306 F.R.D. 574 (N.D. Ill. 2014) .................................................................................. 23

*Lawrence v. First Fin. Inv. Fund V, LLC*,
  No. 2:19-cv-00174-RJS-CMR, 2021 U.S. Dist. LEXIS 162184 (D. Utah Aug. 26, 2021) ...... 20

*Marshal v. Life Time Fitness, Inc.*,
  2017-CH-14262 (Cir. Ct. Cook Cty. July 30, 2019) .................................................... 16

iv

*Martin v. JTH Tax, Inc.*,
  No. 13-6923 (N.D. Ill. Sept. 16, 2015) ............................................................... 20

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ..................................................................... 21, 24

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ..................................................................................... 27

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) ..................................................................... 22, 26

*Mulvania v. Sheriff of Rock Island Cty.*,
  850 F.3d 849 (7th Cir. 2017) ........................................................................... 22

*Nachshin v. AOL, LLC*,
  663 F.3d 1034 (9th Cir. 2011) ...................................................................... 7, 9

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ......................................................................................... 15

*Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*,
  231 F.R.D. 280 (N.D. Ill. 2005) ...................................................................... 22

*O'Sullivan, et al. v. WAM Holdings, Inc., d/b/a All Star Management, Inc.*,
  No. 2019-CH-11575 (Cir. Ct. Cook Cnty. Sept. 2, 2021) ............................... 16

*Pearson v. NBTY, Inc.*,
  772 F.3d 778 (7th Cir. 2014) ........................................................................... 10

*Pelka v. Saren Restaurants Inc.*,
  No. 2019-CH-14664 (Cir. Ct. Cook Cnty. Apr. 9, 2021) ............................... 16

*Phillips Randolph Enters., LLC v. Rice Fields*,
  No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027 (N.D. Ill. Jan. 11, 2007) .................. 19

*Prelipceanu v. Jumio Corp.*,
  2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) ...................................... 16

*Rodriguez v. Simplex Grinnell LP*,
  No. 16 C 9605, 2020 U.S. Dist. LEXIS 273380 (N.D. Ill. Mar. 5, 2020) .............. 22

*Rysewyk v. Sears Holdings Corp.*,
  1:15-cv-4519-MSS, 2019 U.S. Dist. LEXIS 236004 (N.D. Ill. Jan. 29, 2019) ...... 13

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................................. 19

*Sekura v. L.A. Tan Enters., Inc.*,
   2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) ...................................................... 16, 21

*Snyder v. Ocwen Loan Servicing, LLC*,
   No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926 (N.D. Ill. May 14, 2019) ................................ 15

*Spano v. The Boeing Co.*,
   633 F.3d 574 (7th Cir. 2011) ........................................................................................... 22

*Svagdis v. Alro Steel Corp.*,
   2017-CH-12566 (Cir. Ct. Cook Cnty.) ............................................................................. 21

*Sykes v. Clearstaff, Inc.*,
   2019-CH-03390 (Cir. Ct. Cook Cnty. Jan 5, 2021) ............................................................ 17

*Taylor v. Shutterfly, Inc.*,
   No. 5:18-cv-00266-BLF, 2021 U.S. Dist. LEXIS 237069 (N.D. Cal. Dec. 7, 2021) ............... 19

*Trotter v. Summit Staffing*,
   2019-CH-02731 (Cir. Ct. Cook Cnty. Aug. 4, 2020). ........................................................ 16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ....................................................................................................... 23

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859 (7th Cir. 2014) ........................................................................................... 13

*Zepeda v. Intercontinental Hotels Grp., Inc.*,
   2018-CH-02140 (Cir. Ct. Cook Cnty.) ............................................................................. 21

**Statutes**

Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* ......................... 1, 9

735 ILCS 14/5 ................................................................................................................... 2

735 ILCS 14/15 .......................................................................................................... 3, 7, 24

**Other Authorities**

Illinois House Transcript, 2008 Reg. Sess. No. 276 (May 30, 2008) ........................................ 2

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................... passim

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 3

**Treatises**

H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002) ................................ 12

*Manual for Compl. Lit., supra,* (4th ed. 2004) ............................................................. 27

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Kelsey Hirmer respectfully moves the Court for preliminary approval of the class action settlement ("Settlement") reached between Plaintiff and Defendant ESO Solutions, Inc. ("ESO" or "Defendant").

Ms. Hirmer alleges ESO violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* by collecting the proposed Class's fingerprints without complying with the statute's informed consent regime or adhering to a publicly-available policy governing the retention and destruction of this highly-sensitive data.  Defendant denied and continues to deny Plaintiff's allegations.

After engaging in motion practice, the parties participated in a full-day mediation session overseen by the Honorable Judge James F. Holderman (ret.) on July 18, 2023. These efforts culminated in a class-wide settlement.  Pursuant to the settlement agreement reached by the parties, ESO has agreed to pay $4,101,300.00 into a non-reversionary Settlement Fund.  There are 6,414 individuals who will receive an equal, *pro-rata* distribution without the need to file a claim or take any other action. Plaintiff estimates[1] every class member would receive approximately $401 without the need for a claim form.

As demonstrated below, the significant relief provided by the Settlement, along with its equitable and effective method of distribution, places the Settlement squarely within the range of

---

[1] Plaintiff's estimate is based on a pro-rata distribution after deduction of $37,342 in administration costs, $16,412.62 in reimbursed expenses, $10,000 for incentive award, and 36% of the fund after administration costs are deducted, which equals $1,463,074.88 for fees.  *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in statutory class action of 36% of the first $10 million). As explained below, Plaintiff will separately file a fee petition and there is no clear sailing agreement for fees or incentive award.

1

possible approval, whereas the proposed Settlement Class satisfies Rule 23's requirements for conditional certification for settlement purposes only. Accordingly, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, certify the Settlement Class for settlement purposes only, appoint Plaintiff's attorneys as Class Counsel, approve the form and method of Class Notice, and set a Final Approval Hearing.

## II.  RELEVANT BACKGROUND

### A.  The Biometric Information Privacy Act.

The growing use of biometric data in commercial transactions implicates unique privacy concerns. Unlike other forms of personally identifiable information, biometric information such as fingerprints cannot be changed (much less replaced) when stolen. Recognizing the "very serious need of protections for the citizens of Illinois when it comes to biometric information," the legislature passed BIPA in 2008 to provide heightened protections for biometric privacy rights. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276, p.249 (May 30, 2008); *see also* 740 ILCS 14/5(g). The statute features several safeguards that protect Illinois' citizens' ability to maintain control over their biometric information.

### B.  The alleged BIPA violations.

ESO Solutions, Inc. ("ESO") is a Texas-based company that offers an integrated suite of software products, including scheduling software, for EMS agencies, fire departments, and hospitals.  Plaintiff alleges that ESO sells a "software scheduling platform," including alleged "biometric timekeeping authentication technology" used in connection with an ePro BioClock to emergency medical services agencies. Plaintiff contends that during her employment with one of ESO's customers, she was "required to scan her fingerprints" into "Defendant's timekeeping devices" to clock in and out of work each day.

Plaintiff alleges that she was required to track her time and attendance at Elite Medical Transportation Providers, LLC ("Elite") via the ePro BioClock throughout her tenure, which Plaintiff alleges resulted in ESO capturing, collecting, and storing her fingerprint data (as well as every other Settlement Class member's). *See* ECF No. 1 at Ex. A (Compl.), ¶¶ 23-26. ESO denies that it captured, collected, stored, or used Plaintiff's or other's "fingerprint" or biometric identifiers or biometric information, and denies the Plaintiff's allegations.

According to Plaintiff, ESO's systematic collection and storage of the Settlement Class's highly sensitive biometric data violated BIPA in two discrete ways. First, Plaintiff alleges ESO violated Section 15(a) of the statute by failing to implement and adhere to a publicly available policy governing the retention and destruction of the biometric data in its possession. *Id.* at ¶¶ 13, 21, 30-31, 38-44. Second, Plaintiff alleges ESO violated Section 15(b) by collecting, storing, and using the Settlement Class's biometric data without first providing the necessary disclosures or receiving informed written consent. *Id.*, at ¶¶ 13, 21, 24-25, 27-29, 47-54. Again, ESO denied and continues to deny these allegations, including that it had any obligation to comply with the BIPA.

### C. Procedural History.

On January 24, 2022, Plaintiff commenced this class action in the Circuit Court of Cook County. ESO removed the case to this Court on February 22, 2022. *See* ECF No. 1.

On April 15, 2022, ESO moved to stay this case pending the Illinois Appellate Court's resolution of *Tims v. Black Horse Carriers, Inc.* and *Cothron v. White Castle Sys. See* ECF No. 20. The Court denied this Motion on April 18, 2022, and entered a case management schedule.

On May 5, 2022, ESO filed a motion to dismiss under Rule 12(b)(6). *See* ECF Nos. 22-23 (motion and supporting memorandum). On May 31, 2022, while Plaintiff was in the midst of preparing her response to the motion to dismiss, ESO filed a second motion to stay the case (the

"Second Stay Motion") pursuant to the *Colorado River* doctrine pending the resolution of a separate BIPA class action Plaintiff brought litigating against her former employer in state court (the "State Court Action"). *See* ECF Nos. 27-28 (Second Stay Motion and supporting memorandum. On June 2, 2022, the Court stayed the briefing on the ESO's motion to dismiss and entered a briefing schedule on the Second Stay Motion. *See* ECF No. 29. On July 13, 2022, the Court granted the Second Stay Motion.

The Parties subsequently agreed to mediate this dispute on July 18, 2023, before the Honorable James Holderman (ret.) of Judicial Arbitration and Mediation Services, Inc. ("JAMS"). Over the weeks leading up to the mediation, the Parties exchanged information regarding the estimated size of the proposed Class and submitted detailed briefs setting forth their respective views on the strengths of their cases.[2] At mediation, the Parties discussed their relative views of the law and the facts and Plaintiff's theory regarding potential relief for the proposed Class. But after an all-day, highly-adversarial mediation, the Parties were unable to bridge the gap between their respective positions.[3] Nevertheless, the parties continued their settlement efforts over the ensuing two weeks before reaching an agreement-in-principle on August 1, 2023 with the assistance of Judge Holderman.[4] After doing so, the Parties continued extensive negotiations over the next seven and a half months on their remaining points of dispute,[5] which culminated in the fully executed Agreement, a copy of which is attached hereto as *Appendix 1*.

Following the execution of the Agreement, Plaintiff's counsel spent the next two-and-a-half months engaging in third-party discovery to confirm which individuals should be included in

---

[2] *See* Declaration of Keith J. Keogh ("Keogh Decl.") attached as *App. 2*, ¶ 9.
[3] *Id.* at ¶ 10.
[4] *Id.* at ¶ 11.
[5] *Id.*

4

the Settlement Class, obtain contact information for the Settlement Class members, which entailed the issuance of seventeen subpoenas, multiple Rule 37.2 conferences, and motion practice to compel with respect to information Plaintiff requested from third parties.[6] As a result of these efforts, the parties were able to finalize the list of individuals in the Settlement Class, *i.e.,* individuals who used an ePro BioClock in Illinois during the relevant time-period and had their finger-scan data hosted on a server owned or leased by ESO.

### D. The proposed Settlement.

The Settlement's details are contained in the Agreement signed by the Parties. *See App. 1.* For purposes of preliminary approval, the following summarizes the Agreement's terms:

### 1. The Settlement Class.

The Settlement Class is defined as follows:

> All individuals who, while residing in the State of Illinois, scanned their finger in connection with their use of an ePro BioClock and whose finger-scan data was hosted on a server owned or leased by ESO from January 24, 2017, to the date the Court enters the Preliminary Approval Order. The Settlement Class does not encompass individuals who may have used an ePro BioClock in Illinois but did not have their finger-scan data hosted on a server owned or leased by ESO.

*App. 1* at §§ II.32.[7]  Based on the information obtained in discovery, the Settlement Class consists of 6,414 individuals. *See App. 2* (Keogh Decl.), ¶ 14

### 2. Monetary relief for Settlement Class Members.

The Settlement requires ESO to create a non-reversionary Settlement Fund of $4,101,300.00, from which each Settlement Class Member will receive a *pro rata* portion after payment of Settlement Administration Expenses, attorney's fees and costs, and any incentive

---

[6] *Id.* at ¶ 12.
[7] Excluded from the Settlement Class are: (1) the district and magistrate judges presiding over this case; (2) the judges of the Seventh Circuit; (3) the immediate families of the preceding person(s); (4) any Released Party; and (5) any Settlement Class Member who timely opts out.

award approved by the Court. *See App. 1* (Agreement) at §§ II.37, V.54-58, XI.73-74. No amount of the Settlement Fund will revert to ESO, and Settlement Class Members are not required to submit a claim or take any action to receive compensation. Instead, the class administrator ("Administrator") will automatically issue checks to the last known address of each Settlement Class Member who declines to opt out. *Id.* at §§ II.30, XI.73**.** Checks issued to Settlement Class Members shall remain valid for 180 days from the date of their issuance. *Id.* at § XI.73. If, after the expiration date of the checks distributed, there remains money in the Settlement Fund sufficient to pay at least five dollars ($5.00) to each Settlement Class Member who cashed their initial check, those remaining funds will be distributed on a *pro rata* basis to those Settlement Class Members (the "Second Distribution"). *Id.* at § XI.74.

### 3. Prospective relief.

The settlement agreement provides that within thirty (30) days following the entry of the preliminary approval order, ESO will permanently delete any data generated from the scan of any Settlement Class Member's finger in connection with the ePro BioClock which is hosted on servers leased or owned by ESO or will request that its customers do so directly. *App. 1* at §XVII.93. Plaintiff and Class Counsel acknowledge and agree that the deletion of this data shall not be considered evidence that ESO controls such data or used to establish or suggest that ESO or any other entity exercised any control over such data, as set forth in Paragraph 93 of the Settlement Agreement. Further, at the request of Plaintiff and Class Counsel, with respect to individuals who used the BioClock in connection with their work at Elite, Plaintiff's employer, any data generated in connection with the scan of such individual's finger will not be deleted while Plaintiff's lawsuit against Elite is pending. Class Counsel will notify ESO's counsel when the Elite action is resolved and ESO has agreed to permanently delete any data generated from the scan of a finger within 30

days after such notice is provided or will request that Elite do so directly. The Parties acknowledge and agree, that any retention of such data during the pendency of the Elite Action does not constitute a violation of the BIPA or any other similar statute of law and shall not form the basis of any claim by Plaintiff or any Settlement Class Member, but is being retained consistent with 740 ILCS 14/15(a), which allows for the retention of alleged biometric identifiers or biometric information pursuant to a subpoena issued by a court of competent jurisdiction. *Id.*

**4. *Cy pres* distributions.**

Only if a Second Distribution is not feasible or if there remains money after the Second Distribution will the money be donated to a *cy pres* beneficiary. *App. 1* (Agreement) at §XI.74.

The Seventh Circuit has made clear any *cy pres* recipient must be related to the class member's claims and the interests of the class in preventing similar conduct in the future. /. *See Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013). In *Holtzman*, the Seventh Circuit reversed final approval when a objector complained that the Legal Assistance Foundation of Metropolitan Chicago was not an appropriate *cy pres* recipient in TCPA class action settlement because it does not directly or indirectly benefit the class members' interests. Noting the Legal Assistance Foundation was a worthy nonprofit, the Seventh Circuit emphasized the organization was not related to the underlying claim and "many courts have expressed skepticism about using the residue of class actions to make contributions to . . . favorite charities." *Id.* (citing *In re Lupron Marketing & Sales Practices Litigation*, 677 F.3d 21, 31-38 (1st Cir. 2012) (*cy pres* distributions should be aimed at recipients "whose interests reasonably approximate those being pursued by the class."); *Klier v. Elf Atochem North America, Inc.*, 658 F.3d 468, 474 (5th Cir. 2011) ("a *cy pres* distribution is designated to . . . put any unclaimed settlement funds to their next best compensation use, *e.g.*, for the aggregate, indirect, prospective benefit of the class"); *Nachshin*

7

*v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011) ("When selection of *cy pres* beneficiaries is not tethered to the nature of the lawsuit and the interests of the silent class members, the selection process may answer to the whims and self-interests of the parties, their counsel, or the court.").

Thus, Plaintiff proposes any such residual funds be disbursed to the Electronic Privacy Information Center ("EPIC"). EPIC is a public interest research center devoted to safeguarding consumer privacy rights in the digital age. *See* https://epic.org (last visited August 28, 2024). EPIC has been a vocal proponent of biometric privacy rights in particular, having worked with lawmakers and executive agencies on behalf of consumers to regulate use of biometric technologies.[8] Most importantly, EPIC has fought against efforts to weaken BIPA's biometric privacy rights by submitting an amicus brief in *Cothron v. White Castle* urging the Illinois Supreme Court to hold each unauthorized biometric scan triggers a new limitations period. *See* https://epic.org/epic-urges-illinois-supreme-court-to-uphold-illinois-residents-biometric-privacy-rights (last visited August 28, 2024). Put simply, one would be hard-pressed to find another organization more closely aligned with the Settlement Class's interests than EPIC (an organization that has no connection to Plaintiff or her counsel).

Conversely, Defendant has proposed Illinois Heart Rescue or the Chicago Bar Foundation

---

[8]    *See*    https://epic.org/epic-coalition-urge-new-york-lawmakers-to-pass-biometric-recognition-bans/ (last visited August 28, 2024) ("EPIC and a coalition of civil society groups urged lawmakers to pass a package of four bills limiting the use of biometric recognition technologies including facial recognition …. [e]mphasizing … harms … [such as] bias, over-policing, wrongful arrests, and disparate impacts on marginalized communities."); *id.* ("EPIC and a coalition of groups urged Congress to pause TSA's use of facial recognition at airport security checkpoints.");      https://epic.org/overview-of-epics-comments-to-doj-and-dhs-on-the-use-of-facial-recognition-other-technologies-using-biometric-information-and-predictive-algorithms (last visited August 28, 2024) ("EPIC submitted comments in response to DOJ and DHS' Request for Written Submissions … as the agencies craft new guidance for law enforcement on certain advanced technologies … [including] facial recognition ….").

as *cy pres* recipients. Alternatively, Defendant has proposed that any *cy pres* distribution be split between the Electronic Privacy Information Center and either Illinois Heart Rescue or the Chicago Bar Foundation. While the Chicago Bar Foundation and Illinois Heart Rescue are undoubtedly worthy organizations, neither have any connection to the Settlement Class's interests or the underlying claims. Thus, the fact both charities serve important social goals cannot justify their receipt of any unclaimed settlement funds. *Nachsin, supra* (finding *cy pres* distribution to Boys and Girls Club of America in consumer protection class action inappropriate). The Court should therefore designate EPIC as the sole *cy pres* recipient. *See Ira Holtzman,* 728 F.3d at 689.

     **5. Settlement Class release.**

In exchange for the benefits allowed under the Settlement, Settlement Class Members who do not opt out will provide a release tailored to the alleged claims and practices at issue in this case. Specifically, they will release "any and all claims, rights, demands, liabilities, lawsuits and/or causes of action of every nature and description, whether known or unknown, filed or unfiled, asserted or as of yet unasserted, existing or contingent, whether legal, statutory, equitable, or of any other type or form, whether under federal, state, or local law, and whether brought in an individual, representative, or any other capacity, of every nature and description whatsoever, including, but not limited to, claims that were or could have been brought in the Lawsuit or any other actions filed (or to be filed) by Plaintiff and Settlement Class Members against the Released Parties relating in any way to or connected with the alleged capture, collection, storage, possession, transmission, conversion, purchase, obtaining, sale, lease, profit from, disclosure, re-disclosure, dissemination, transmittal, conversion and/or other use of alleged biometric identifiers and/or biometric information through the date of Final Approval of Settlement, including, but not limited to, claims under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 et seq. *Id*. at §

XII.76. Significantly, the Settlement expressly excludes any claims against ESO's customers that used the ePro BioClock in the State of Illinois. *Id.* at § XII.79. Thus, Plaintiff and Settlement Class Members may still pursue BIPA claims against their employers.

### 6. Class Representative Service Award.

The Agreement provides Plaintiff may petition the Court for a Service Award. *Id.* at § V.57. There is no clear sailing provision as to this request. The Service Award shall be paid out of the Settlement Fund and is subject to this Court's approval; neither Court approval nor the amount of the Service Award is a condition of the Settlement. *Id.* Given Plaintiff's role in prosecuting this action on behalf of the Settlement Class, Plaintiff will request a Service Award of $10,000.00. The Class Notice will advise the Settlement Class of Plaintiff's request.

### 7. Attorneys' fees and costs.

Class Counsel will apply to the Court for an award of attorneys' fees and costs prior to notice being sent. As will be addressed in the motion for attorneys' fees, courts in this district commonly award approximately 36% plus reasonable expenses in common fund class settlements after settlement administration costs are deducted. *See Birchmeier supra* 796-97 (7th Cir. 2018) (affirming attorney fees in statutory class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (Kennelly, J.) (36% of fund net admin costs in statutory action).[9]

This amount is appropriate to compensate Class Counsel in this amount here for the work they have performed in procuring a settlement for the Settlement Class, as well as the work remaining to be performed in documenting the Settlement, securing Court approval of the

---

[9] *See also Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (holding attorneys' fees awarded to class counsel should not exceed at most a half of the total amount of money going to class members); *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation").

settlement, overseeing settlement implementation and administration, assisting Settlement Class Members, and obtaining dismissal of the action. It should be noted, however, that the enforceability of the Settlement is not contingent on Court approval of an award of attorneys' fees or costs. *Id.* at § V.56. Further, the Class Notice will inform the Settlement Class Members Class Counsel will seek 36% of the fund net administration costs. The Agreement does not contain a clear sailing agreement as to attorney fees or costs.

### 8. Administration and Notice.

All costs of notice and claims administration shall be paid by ESO out of the Settlement Fund. The Administrator will be KCC Class Action Services LLC ("KCC") subject to this Court's approval. *App. 1* (Agreement) at §II.29. The Administrator shall: (1) issue Class Notice; (2) set up and maintain the settlement website and toll-free number; and (3) issue settlement payments. *Id.* at §§ VI, XI.

Within twenty-one (21) days of the entry of the Preliminary Approval Order, the Administrator will issue the Class Notice (Exhibit 3 to the Agreement) via direct mail to all Settlement Class Members. *Id.* at § VI.60.A. Before doing so, the Administrator will update Settlement Class Members' addresses by running their names and addresses through the National Change of Address database. *Id.* For Settlement Class Members whose Notice is returned as undeliverable, the Administrator will conduct a database search and re-issue the Mail Notice to all Settlement Class Members for whom an alternative address can be found. *Id.*

Further, the Administrator will establish and maintain a Settlement Website www.esoBIPAsettlement.com. *Id.* at § VI.60.B. The Settlement Website will include general information such as the Agreement, Website Notice, the Preliminary Approval Order, the operative Complaint, the attorney fee motion, and any other materials the Parties agree to include. *Id.*

## III.    ARGUMENT

### A.  The settlement approval process.

Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion"  There is usually a presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995).

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

In granting preliminary approval Rule 23(e) requires courts to determine whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the

proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i—ii). Both requirements are satisfied here.

### B. The Settlement warrants preliminary approval.

When deciding whether to grant preliminary approval of a proposed settlement, Rule 23(e)(2) directs courts to consider whether: (1) the named plaintiff and class counsel have adequately represented the class; (2) the settlement resulted from arm's-length negotiations; (3) the settlement treats class members equally; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *see, e.g., Rysewyk v. Sears Holdings Corp.*, Civil Action No. 1:15-cv-4519-MSS, 2019 U.S. Dist. LEXIS 236004, at \*11-12 (N.D. Ill. Jan. 29, 2019) (Shah, J.).[10] Each of these factors supports preliminary approval.

### 1. The Class has been adequately represented.

The first Rule 23(e)(2) factor is satisfied where the named plaintiff: (1) possesses an interest in the outcome of the case sufficient to ensure vigorous advocacy; (2) has no interest antagonistic to the class's; and (2) has retained qualified and competent counsel. *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006).

The first two prongs of the adequacy analysis are satisfied here. To begin, Plaintiff's interests in this case are aligned with, and not antagonistic to, those of the class she seeks to represent. Plaintiff and the other Settlement Class Members are all individuals who used the ePro BioClock and whose finger-scan data was hosted on a sever owned or leased by ESO during the

---

[10] The factors to be considered under the 2018 amendment to Rule 23 "overlap with the factors articulated by the Seventh Circuit, which include: '(1) the strength of the case for plaintiffs on the merits, balanced against the extent of the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Rysewyk*, 2019 U.S. Dist. LEXIS 236004, at \*12 (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)).

13

relevant time-period and share identical claims arising from a common course of conduct: ESO's allegedly unlawful collection and retention of their biometric data. To vindicate those claims, Plaintiff has vigorously prosecuted this action on behalf of the Settlement by retaining counsel, assisting her attorneys in investigating the Settlement Class's BIPA claims, reviewing, and approving the Class Action Complaint prior to filing, regularly conferring with her attorneys throughout the litigation, and reviewing and approving the Agreement prior to signing it. *See App. 2* (Keogh Decl.) at ¶ 19.

The third prong of the adequacy analysis is also satisfied because proposed Class Counsel have extensive experience in complex litigation and consumer class actions involving statutory privacy claims such as BIPA and have been found adequate and appointed class counsel in scores of cases arising under various other consumer protection statutes. *See id.* at ¶¶ 3-5, 20-52. Drawing on this experience, proposed Class Counsel were able to extensively evaluate the merits of this case, ESO's defenses, the benefits of the proposed Settlement, and the attendant risks of litigation.

Further, Class Counsel have vigorously pursued the class claims from the outset, from investigating Plaintiff's claims, drafting, and filing a well-pled complaint, briefing a motion to stay, obtaining informal discovery into merits and class issues, and preparing a detailed mediation statement that spelled out Plaintiff's factual and legal theories. *See id.* at ¶¶ 7-9. These efforts culminated in a non-reversionary Settlement Fund that provides all Settlement Class Members with significant cash relief without the need to submit a claims form or other paperwork. As such, the Court should find the adequacy of representation prong met.

### 2. The Settlement resulted from arm's length negotiations.

The second 23(e)(2) factor focuses on whether the Settlement is the product of an "arm's length transaction. As detailed above, the Settlement is the result of extensive, arm's length

negotiations between attorneys experienced in the litigation, carried out during an all-day mediation session held before Judge Holderman (Ret.) and only reached after the Parties continued their discussions for an additional two weeks following the mediation. *See App. 2* (Keogh Decl.) at ¶¶ 10-11. The Parties then spent the next seven months finalizing the Agreement. *Id.* at ¶ 12.

The arms-length nature of the Parties' discussions is also borne out by the terms of the Agreement itself. The Settlement is non-reversionary, automatically provides significant cash payments to all members of the Settlement Class and is devoid of any provision that could indicate fraud or collusion such as a "clear sailing" or "kicker" clause related to attorney's fees or the incentive award. *See Snyder v. Ocwen Loan Servicing, LLC,* No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926, at *15 (N.D. Ill. May 14, 2019) (granting preliminary approval where agreement had "no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation"); *Aranda v. Caribbean Cruise Line, Inc.,* No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400, at *14 (N.D. Ill. Mar. 2, 2017) (same).

For all these reasons, the Court should find the Settlement here was the result of good-faith, arm's-length negotiations.

### 3. The proposed Settlement treats Settlement Class Members equally.

Here, Plaintiff contends each Settlement Class Member has identical BIPA claims, which is why they receive identical treatment under the proposed Settlement. Specifically, every Settlement Class Member is entitled to an equal, *pro rata* share of the Settlement Fund. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the

limited fund"). Because there is no disparate treatment between members, the settlement merits approval.

### 4. The relief provided to the Settlement Class is more than adequate.

The most critical Rule 23(e)(2) factor analyzes whether the relief provided for the class is adequate. Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

Here, ESO has agreed to create a $4,101,300.00 non-reversionary Settlement Fund for a settlement class of 6,414 individuals. *See App. 1* at § II.37. Thus, the Settlement represents a significant and immediate value for those Class Members. As noted above, Plaintiff estimates every single Settlement Class Member will receive $401.39 after reductions for Administrative Expenses, attorney's fees, and the incentive award.

This class relief compares more than favorably with per-claimant recoveries in prior settlements in similar BIPA cases. *See Sekura,* 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) (net recovery of $125 to $150 per claimant); *Marshal v. Life Time Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cty. July 30, 2019) (net recovery of approximately $270 per claimant, as well as dark web monitoring valued at approximately $130.00 per claimant); *Prelipceanu v. Jumio Corp.*, 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) (net recovery of $262.28 per claimant); *Trotter v. Summit Staffing,* 2019-CH-02731 (Cir. Ct. Cook Cnty. Aug. 4, 2020) (net recovery of $102); *Kusinski v. ADP, LLC*, 2017-CH-12364 (Cook Cnty. Feb. 10, 2021) (net recovery of $250 per claimant); *O'Sullivan, et al. v. WAM Holdings, Inc., d/b/a All Star Management, Inc.*, 2019-CH-11575 (Cir. Ct. Cook Cnty. Sept. 2, 2021) (net recovery of $384.09); *Pelka v. Saren Restaurants Inc.*, 2019-CH-14664 (Cir. Ct. Cook Cnty. Apr. 9, 2021) (net recovery of $289 per

claimant); *Sykes v. Clearstaff, Inc.*, 2019-CH-03390 (Cir. Ct. Cook Cnty. Jan 5, 2021) (net recovery of $298.04).[11] In sum, the relief provided by the proposed Settlement is more than adequate when compared against comparable results.

Finally, as shown below, the adequacy of the class relief is further illustrated by the sub-factors set forth in Rule 23(e)(2).

> ### a. The risks of continued litigation weigh, when viewed against the relief provided, weigh in favor of approval.

This sub-factor weighs heavily in favor of approval because the proposed Settlement provides immediate relief to Settlement Class Members while avoiding potentially years of costly, complex litigation and appeals, as well as the risk that goes with it.

While Plaintiff remains confident in the strength of her claims, ESO denied and continues to deny all of her material allegations while raising myriad legal and factual defenses that, if successful, could preclude any recovery for the Class. For starters, ESO argued it faces no liability under BIPA because the finger-scan information allegedly captured in connection with the ePro BioClock does not fall within the statutory definition of "biometric identifiers" or "biometric information." *See* ECF No. 31 at 22. Defeating this highly technical defense would entail costly expert and third-party discovery. While Plaintiff is confident, she would prevail on this issue, the lack of any guiding precedent offers no guarantee of success at summary judgment or trial.

---

[11] Outside the realm of BIPA, the cash payments afforded by the Settlement Agreement dwarf the recoveries typically seen in privacy class actions, which often provide class members with little (if any) monetary relief. *See, e.g., Lane v. Facebook, Inc.,* 696 F.3d 811, 818 (9th Cir. 2012) (upholding settlement providing only $9.5 million in *cy pres* relief despite that statutory claims at issue provided for significant statutory damages); *In re Google LLC Street View Electronic Communications Litigation*, No. 3:10-md-02184, 2020 U.S. Dist. LEXIS 47928 (N.D. Cal. Mar. 18, 2020) (approving *cy pres* distribution of $13 million fund in case with 60 million person class (equating to $0.22 per person before fees, expenses, or administration costs).

ESO also argued, among other things: (1) ESO is merely a passive technology vendor, and thus did not take an "active step" towards collecting and storing Plaintiff's and the Settlement Class's alleged biometric data; (2) the extraterritoriality doctrine barred Plaintiff's claim because any alleged biometric collection or storage on ESO's systems, if any, part took place outside of Illinois; (3) Plaintiff and the Settlement Class consented to any collection of their alleged biometric data (if any) and waived their claims under BIPA; and (4) Plaintiff's claims were barred because the data at issue falls within the healthcare exemption in Section 10 of the BIPA, as any alleged collection of their data was for healthcare treatment, payment, or operations as those terms are defined under HIPAA. A victory on these defenses could doom the case in its entirety or greatly reduce the size of the proposed class. *See In re Southwest Airlines Voucher Litig.*, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval.").

Plaintiff would also need to prevail at class certification, which would entail extensive motion practice on several hotly contested issues with no guarantee of success. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment (directing courts to consider the likelihood of certification when evaluating this sub-factor). Though Plaintiff maintains this case is an ideal candidate for certification, her success is certainly not guaranteed.

Finally, even if Plaintiff prevailed at class certification and obtained a complete victory on the merits, ESO intended to seek a reduction of damages based on the argument an award of $1,000 or $5,000 per violation would violate its right to due process under the Illinois and United States Constitution. *See* ECF No. 31 at 24. This, too, presents a significant risk, as some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo &*

18

*Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendants' due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [Defendants'] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Taking these realities into account, the monetary relief available to each Settlement Class Member represents a truly excellent result. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Settlement Class Members to receive immediate and certain relief. *See, e.g., Goldsmith v. Tech. Sols. Co.,* No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). Thus, this sub-factor weighs in favor of preliminary approval.

### b. The proposed method of distribution is effective.

The next sub-factor analyzes whether the proposed method for distributing relief to the class is effective. Fed. R. Civ. P. 23(3)(2)(C)(ii). Unsurprisingly, courts routinely find this factor satisfied where class members do not need to take any affirmative steps to receive their portion of the settlement fund. *See, e.g., Taylor v. Shutterfly, Inc.,* No. 5:18-cv-00266-BLF, 2021 U.S. Dist. LEXIS 237069, at *20 (N.D. Cal. Dec. 7, 2021) (finding distribution method reasonable where

"[a]ll Class Members automatically receive benefits under the Settlement, without the need to file a Claim."); *Lawrence v. First Fin. Inv. Fund V, LLC,* No. 2:19-cv-00174-RJS-CMR, 2021 U.S. Dist. LEXIS 162184, at *14-15 (D. Utah Aug. 26, 2021) ("Here, the method of distributing relief to the class is sufficiently effective and no claims process is required. Because the class members can be individually identified from First Financial' s records, no action is required of any class member to receive the benefits of the Settlement.").

The same result is warranted here. Settlement Class Members do not need to submit a claim form or take any action. Instead, the Administrator will simply distribute each *pro rata* share of the Settlement Fund. This method of distribution is weighs in favor of preliminary approval.

### c. The proposed attorney fee award and timing of payment support preliminary approval.

The final relevant sub-factor[12] analyzes the adequacy of the class relief in light of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

Here, the Agreement does not provide ESO has agreed to any set fee amount. Instead, Class Counsel will petition the Court to approve a fee award of 36% of the Settlement Fund (excluding Administrative Expenses) — an amount courts within the Seventh Circuit routinely award. *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) (Shah, J.) (38% of total fund); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (Kennelly, J.) (36% of the fund net admin

---

[12] The fourth sub-factor directs courts to consider any side deals or separate agreements reached by the parties in connection with the settlement agreement. *See* Fed. R. Civ. P. 23(e)(2)(c)(iv); *id.* at § (e)(3). Because the Parties have reached no such agreement, *see* App. 2 (Keogh Decl.) at ¶ 16, this factor does not factor into the analysis. *See, e.g., Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *20 (S.D. Ill. Dec. 13, 2018) ("The parties have not identified, nor is the Court aware of, any agreement—other than the Settlement itself—that must be considered pursuant to Rule 23(e)(3). This factor is neutral.").

costs); *see also Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees of 36% of the first $10 million.)[13]

Regarding timing, Class Counsel will file their application on the date of the Notice Deadline allowing Class Members to review or object, and actual funding will occur at the same time as funding of the Settlement Fund. Thus, the provisions regarding fees are fair, reasonable and support approval.

Considering all these factors, the relief provided to the class is more than adequate and merits approval. For the foregoing reasons, the Parties' Settlement Agreement is fair, reasonable, and adequate, and merits approval.

## C. The Settlement Class should be certified for settlement purposes only.

In order to certify a settlement class, the Court must also determine whether the requirements of Rule 23 are met. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997).

To that end, Plaintiff must demonstrate: (i) the proposed class be so numerous that joinder of individual class members is impracticable; (ii) there be questions of law and fact common to the class; (iii) the proposed class representative's claims be typical of the class claims; and (iv) the named class representative and counsel will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a); *see Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). And, because the Settlement provides for monetary relief, the Settlement Class must also satisfy Rule 23(b)(3)'s requirements: (i) common questions of law or fact predominate over individual issues; and (ii) the class action device is superior to other means of resolving the claims.

---

[13] Courts in Cook County have awarded 40% of the gross settlement amount in other BIPA class action settlements. *See e.g. Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (awarding 40% of fund); *Zepeda v. Intercontinental Hotels Grp., Inc.*, 2018-CH-02140 (Cir. Ct. Cook Cnty.) (awarding 40% of fund); *Svagdis v. Alro Steel Corp.*, 2017-CH-12566 (Cir. Ct. Cook Cnty.) (awarding 40% of fund);

Fed. R. Civ. P. 23(b)(2). Finally, a Rule 23(b)(3) class must also be "ascertainable"—*i.e.* defined by objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015).

As explained below, the Settlement Class satisfies all of these prerequisites and should therefore be certified for settlement purposes only.

### 1. The Settlement Class is sufficiently numerous.

Rule 23(a)(1) requires that a class be so numerous that joinder of all its members is impracticable. A class of as few as 40 is sufficient. *See Rodriguez v. Simplex Grinnell LP,* No. 16 C 9605, 2020 U.S. Dist. LEXIS 273380, at *5 (N.D. Ill. Mar. 5, 2020) (citing *Mulvania v. Sheriff of Rock Island Cty.,* 850 F.3d 849, 859 (7th Cir. 2017)). Here, the Settlement Class consists of 6,414 members, which easily satisfies numerosity.

### 2. Plaintiff's claims are typical.

A putative class representative also must demonstrate her claims are typical of the claims of the class she seeks to represent. Fed. R. Civ. P. 23(a)(3). This prong of the Rule 23 analysis simply requires "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co*., 633 F.3d 574, 586 (7th Cir. 2011); *see also Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (typicality is a "low hurdle" requiring "neither complete coextensivity nor even substantial identity of claims"). The critical issue is whether the plaintiff's claim "arise[es] from the same events or course of conduct that gives rise to the putative class members' claims." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018).

Here, Plaintiff asserts there is no daylight between Plaintiff's claims and those of the Settlement Class. All flow directly from Plaintiff's assertions regarding ESO's alleged failure to:

(1) inform Plaintiff and the Settlement Class, in writing, about the alleged collection of their alleged biometric data, along with the purpose and length of term for the collection; (2) obtain Plaintiff and the Settlement Class's informed written consent prior to allegedly collecting their alleged biometric data; (3) implement a publicly-available policy governing the retention and destruction of alleged biometric data; and (4) permanently destroy Plaintiff's and the Settlement Class's alleged biometric data at the earliest practicable time (*i.e.* upon termination of their employment). ECF. No. 1 at Ex. A (Compl.), at ¶¶ 13, 21, 24-25, 27-29, 30-31, 38-44, 47-54. Hence, the outcome of Plaintiff's and the Settlement Class's claims depend entirely on *ESO's* alleged biometric collection and destruction practices—*i.e.* a common course of conduct. Typicality is satisfied.

### 3. Plaintiff and Counsel are adequate.

Adequacy means Plaintiff and his counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As demonstrated above, both Plaintiff and proposed Class Counsel fully satisfy this requirement. *See* Section III.B.1, *supra*.

### 4. Commonality is satisfied.

Commonality requires "there are questions of law or fact common to the class" and the class members have suffered the same injury." Fed. R. Civ. P. 23(a)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). The class claims must "depend upon a common contention … capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. A single common question is sufficient to satisfy Rule 23(a)(2). *Langendorf v. Skinnygirl Cocktails, LLC,* 306 F.R.D. 574, 589 (N.D. Ill. 2014) (collecting cases).

Plaintiff's and the Settlement Class's BIPA claims are based on the same contention and

allegedly unlawful course of conduct: That ESO violated Sections 15(a) and 15(b) of BIPA by allegedly collecting, storing, and using the Settlement Class's alleged biometric data without obtaining informed written consent or implementing and adhering to a publicly available biometric retention and destruction policy. This contention depends entirely on common questions that can be resolved on a class-wide basis "in one stroke." *See, e.g., In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 545 (N.D. Cal. 2018) ("[T]here is no doubt that a template-based [BIPA] class poses common legal and factual questions….").

### 5. Common questions predominate.

Rule 23(b)(3) requires "the questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance "is satisfied when 'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" *Messner*, 669 F.3d at 815. Put another way, the critical issue is whether "there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis…Such proof obviates the need to examine each class member's individual position." *Golon v. Ohio Savs. Bank*, No. 98-cv-7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15, 1999).

Plaintiff contends that is the case here. Plaintiff's and the Settlement Class's claims hinge entirely on the common questions identified above, all of which Plaintiff claims can be resolved through class-wide evidence maintained by ESO. Plaintiff claims the common questions posed by the Section 15(b) claim, for instance, can be easily resolved by reviewing the uniform disclosures and releases ESO provided to Class Members (if any), along with evidence regarding the type of data allegedly captured in connection with the ePro BioClock (if any). As to the Section 15(a) claim, Plaintiff claims the question of whether ESO destroyed the Settlement Class's alleged

biometric data once it was no longer necessary—*i.e.* when their employment ended—is a straightforward factual issue that turns on ESO's data destruction policies (or lack thereof).

In sum, the BIPA violations at issue can, for provisional certification purposes, be determined on a class-wide basis in a single adjudication without consideration of any individualized issues. *See, e.g., In re Facebook*, 326 F.R.D. at 545-48 (predominance satisfied where liability turned on class-wide issues—whether defendant's facial recognition software captured biometric identifiers, and, if so, whether defendant's uniform disclosures complied with Section 15(b)'s informed regime); *see also Kurgan v. Chiro One Wellness Ctrs. LLC*, No. 10-cv-1899, 2014 U.S. Dist. LEXIS 20255, at *33 (N.D. Ill. Feb. 19, 2014) ("Where, as here, the focus is on the liability-imposing conduct of the defendant that is identical for all putative plaintiffs, the predominance element is satisfied."). As such, predominance is satisfied.

### 6. A class action is the superior means of resolving this dispute.

Rule 23(b)(3) requires "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule provides four criteria that govern superiority analysis, all of which weigh in favor of certification.

First, the "extent and nature" of any parallel litigations does not defeat superiority, as there is no indication any Settlement Class Member has a pending BIPA suit against ESO. *See* Fed. R. Civ. P. 23(b)(3)(B) (one superiority factor is "the extent and nature of any litigation concerning the controversy already begun by or against class members"). Second, it is desirable to concentrate the litigation, including the settlement approval process, in this forum because the events underlying the Settlement Class's claims arose in this district. *See* Fed. R. Civ. P. 23(b)(3)(C); *see also Barnes v. Air Line Pilots Ass'n,* 310 F.R.D. 551, 562 (N.D. Ill. 2015). Third, it is highly unlikely any class members have an interest in individually controlling this action, *see* Fed. R. Civ.

P 23(b)(3)(A).

Finally, the fourth factor—"the likely difficulty in managing a class action," Fed. R. Civ. P. 23(b)(3)(D)—is a non-issue where, as here, certification is sought solely for settlement purposes. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). Nevertheless, manageability is not a problem here. There are no individual issues that could present any overwhelming practical or administrative issues at trial, and the notice process will be trivially easy in this case given that ESO possesses the names and last known addresses for each member of the Classes. *See Barnes*, 310 F.R.D. at 562.

As such, all four factors set forth in Rule 23(b)(3) support a finding of superiority.

**7. The Settlement Class is ascertainable.**

Finally, the Settlement Class is ascertainable. Although not an element of Rule 23, the ascertainability requirement imposes a modest bar. This simply requires the class to be defined based on "objective" criteria. *Mullins,* 795 F.3d at 672.

Here, the Settlement Class definition is based entirely on objective components: (1) employment at one of ESO's customers' Illinois locations; (2) use of the ePro BioClock at issue; and (3) hosting of the finger-scan data on a server owned or leased by ESO. Further, Settlement Class Members are not only ascertainable, but can be identified based upon records of ESO and its customers. Accordingly, the ascertainability requirement is satisfied. *Mullins,* 795 F.3d at 672.

As shown above, the Settlement Class satisfies the requirements of Rule 23(a) and Rule 23(b)(3), as well as the Seventh Circuit's ascertainability standard. Thus, the Court should certify the proposed Settlement Class.

**D. The proposed Notice plan is constitutionally sound.**

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement. *Manual for Compl. Lit., supra*, at § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The proposed forms of Notice, attached as Exhibits 1 and 2 to the Agreement, satisfy Rule 23. The Notice Plan provides direct, individual notice ("Mail Notice") will be mailed by the Administrator to the last known address of each Settlement Class Member within 21 days of entry of the Preliminary Approval Order. *App. 1* at § VI.60.A. For all mail returned as undeliverable, the Administrator will use reasonable means to update the address and re-issue the Mail Notice. *Id.*

The Mail Notice provides information about the claims at issue, the cash benefits provided by the Settlement, the process for distributing those cash benefits the proposed attorney fee and incentive awards, and the procedure for excluding oneself or objecting to the Settlement. *See App. 1* at Ex. 1. Settlement Class Members will have up to and including 60 days from the date the Mail Notice is issued to exclude themselves from the Settlement. *Id.* at § II.19. The Mail Notice shall also direct recipients to the Settlement Website, which will provide Settlement Class Members with 24-hour access to additional information about the case, including important court documents and a detailed "long form" Notice document ("Website Notice"). *See Id.* § VI.60.A-B; *see also id.* at Ex. 1 (Mail Notice); *id.* at Ex. 2 (Website Notice).

Accordingly, the proposed Notice Plan passes muster and should be approved.

## IV.     CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests the Court: (1) preliminarily approve the proposed  Settlement as being within the range of possible final approval; (2) conditionally certify the  Settlement Class for settlement purposes only and appoint Plaintiff as class representative; (3) appoint her attorneys, Keith J. Keogh and Gregg M. Barbakoff of Keogh Law, Ltd. as Class Counsel; (4) approve the proposed Notice Program, to be administered by KCC; (5) direct Notice be provided to the  Settlement Class pursuant to the terms of the  Agreement; (6) establish a procedure for Settlement Class Members to object to the Settlement or exclude themselves from the Class; (7) set a deadline after the Notice Deadline, after which no one shall be allowed to object to the Settlement, exclude himself or herself from the  Settlement Class, or seek to intervene; (8) schedule a hearing to consider final approval of the Settlement and set the following schedule as set forth in the draft Preliminary Approval Order attached as *Appendix* C, which provides the following schedule:

| | |
|---|---|
| _____, 2024 [21 days after the date of this Order] | Deadline for the Settlement Administrator to send notice to the Settlement Class in accordance with the Agreement and this Order (Notice Deadline) |
| _____, 2024 [Same as Notice Deadline] | Deadline for Plaintiff to file his Motion for Attorneys' Fees and Expenses, and any Incentive Award |
| _____, 2024 [60 days after Notice Deadline] | Deadline for any member of the Settlement Class to request exclusion from the Settlement or object to the Settlement in accordance with the Notice and this Order (Opt-Out and Objection Deadline) |
| _____, 2024 [21 days after the Opt-Out, Objection, and Claim Deadline] | Deadline for Plaintiff to file:<br>(1) Motion and memorandum in support of final approval, including proof of class notice; and<br>(2) Response to any objections. |
| _____, 2025 at _____ _.m. [Court's Convenience] | Final Approval Hearing |

Dated: August 29, 2024        Respectfully submitted,

**KELSEY HIRMER, individually and on behalf of all others similarly situated,**

By: _/s/ Gregg M. Barbakoff_
    Keith J. Keogh
    Gregg M. Barbakoff
    KEOGH LAW, LTD.
    55 W. Monroe St., Suite 3390
    Chicago, Illinois 60603
    Tel.: (312) 726-1092
    Fax: (312) 726-1093
    keith@keoghlaw.com
    gbarbakoff@keoghlaw.com

*Attorneys for Plaintiff and the Proposed Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that, on **August 29, 2024**, I caused a copy of the foregoing document, along with any attached exhibits, to be served upon all counsel of record via electronic filing using the CM/ECF system.


          /s/ Gregg M. Barbakoff_____