**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KELSEY HIRMER, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 22-cv-01018 |
| *Plaintiff,* | ) ) ) | Hon. LaShonda A. Hunt. Presiding Judge |
| v. | ) | |
| ESO SOLUTIONS, INC. d/b/a ECORE SOLUTIONS, INC., | ) ) ) | |
| *Defendant.* | ) ) | |

**<u>PLAINTIFF'S MOTION FOR AND MEMORANDUM
IN SUPPORT OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD</u>**

225101

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ..................................................................................- 1 -

II.    RELEVANT BACKGROUND .................................................................- 2 -

     A.    Procedural History ......................................................................- 2 -

     B.    Class Counsel negotiated an extremely favorable Settlement ..........................- 4 -

III.    ARGUMENT ...................................................................................- 5 -

     A.    Attorney fees based on a percentage of the common fund are appropriate .......- 5 -

     B.    Class Counsel's request is within the market rate .................................. 7

          1.    Analysis of the relevant market for legal services supports the fee request ..................................................................................... 7

          2.    The risk of non-payment also supports the requested fee award ..............- 9 -

          3.    The benefits conferred on the Settlement Class support the requested fee award ..............................................................................- 11 -

     C.    Class Counsel's litigation expenses should be approved................................- 12 -

     D.    The requested Service Award for Ms. Hirmer should be approved ................- 13 -

IV.    CONCLUSION.................................................................................- 15 -

**TABLE OF AUTHORITIES**

**Cases**

*Allen v. JPMorgan Chase Bank, NA,*
   No. 13-8285, ECF No. 93 (N.D. Ill. Oct. 21, 2015) ................................................. 14

*Beesley v. International Paper Co.,*
   2014 U.S. Dist. LEXIS 12037 (S.D. Ill. Jan. 31, 2014) ........................................... 14

*Benzion v. Vivint, Inc.,*
   No. 12-61826 (S.D. Fla. Feb. 23, 2015) .................................................................. 15

*Birchmeier v. Caribbean Cruise Line, Inc.,*
   896 F.3d 792 (7th Cir. 2018) .............................................................................. 2, 7

*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980) ................................................................................................ 5

*Bryant v. Loews Chicago Hotel, Inc.,*
   No. 1:19-cv-03195 (N.D. Ill. Oct. 30, 2020) ............................................................. 7

*Cook v. Niedert,*
   142 F.3d 1004 (7th Cir. 1998) ......................................................................... 13, 15

*Cothron v. White Castle Sys.,*
   2023 IL 128004 .................................................................................................... 11

*Desai v. ADT Security Servs., Inc.,*
   No. 11-1925, ECF No. 243 (N.D. Ill. Feb. 27, 2013) ............................................. 14

*Dixon v. Smith Senior Living,*
   No. 1:17-cv- 08033 (N.D. Ill. Aug. 20, 2019) ..................................................... 7, 14

*Freeman-McKee v. Alliance Ground Int'l, LLC,*
   No. 2017-CH-13636 (Ill. Cir. Ct., Cook Cty. June 15, 2021) .................................... 9

*Gaskill v. Gordon,*
   942 F. Supp. 382  (N.D. Ill. 1996) ....................................................................... 7, 8

*Gebka v. Allstate Corp.,*
   Case No. 19cv6662, ECF No. 145 (N.D. Ill. Sep. 27, 2022) ...................................... 8

*Guzman v. National Packaging Services Corp.,*
   No. 19-cv-1722-pp, 2022 U.S. Dist. LEXIS 120514 (E.D. Wis. July 8, 2022) ........... 8

*Hageman v. AT & T Mobility LLC,*
  No. CV 13-50-BLG-RWA, 2015 WL 9855925 (D. Mont. Feb. 11, 2015) ............................ 15

*Hale v. State Farm Mutual Automobile Insurance Co.,*
  2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018).................................................... 6, 14

*Heekin v. Anthem, Inc.,*
  No. 05-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) .................................................. 15

*Heidelberg v. Forman Mills Inc.,*
  No. 2020-CH-04079 (Cir. Ct. Cook Cty., Aug. 22, 2023) .................................................. 8, 14

*Ikuseghan v. Multicare Health Sys.,*
  No. C14-5539 BHS, 2016 WL 4363198 (W.D. Wash. Aug. 16, 2016) .................................. 15

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.,*
  792 F. Supp. 2d 1028 (N.D. Ill. 2011) ........................................................................ 7, 11

*In re Capital One Tel. Consumer Prot. Act Litig.,*
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................................................. 6

*In re Cendant Corp. PRIDES Litig.,*
  243 F.3d 722 (3d Cir. 2001) ...................................................................................... 6

*In re FedEx Ground Package System, Inc. Employment Practices Litig.,*
  251 F. Supp. 3d 1225 (N.D. Ind. 2017) ...................................................................... 6

*In re Southwest Airlines Voucher Litig.,*
  2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ............................................................. 10

*In re Synthroid Mktg. Litig.,*
  264 F.3d 712 (7th Cir. 2001) ............................................................................... 9, 13

*In re Synthroid Mktg. Litig.,*
  325 F.3d 974, (7th Cir. 2003) .................................................................................. 6

*Kirchoff v. Flynn,*
  786 F.2d 320 (7th Cir. 1986) ..................................................................................... 8

*Knobloch v. ABC Financial Services, LLC,*
  No. 2017-CH-12266 (Ill. Cir. Ct., Cook Cty. June 25, 2021) ...................................... 9

*Kusinski v. ADP, LLC,*
  No. 2017-CH-12364 (Cir. Ct. Cook Cty. Feb. 10, 2021) ........................................... 12

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*,
   No. 08CV3610 CLW, 2015 WL 2383358 (D.N.J. May 18, 2015)........................................... 15

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*,
   aff'd, 639 F. App'x 880 (3d Cir. 2016) ................................................................................... 15

*Lees v. Anthem Ins. Companies Inc.*,
   No. 4:13CV1411 SNLJ, 2015 WL 3645208 (E.D. Mo. June 10, 2015)................................... 15

*Legg v. PTZ  Ins. Agency, Ltd, et al.*,
   No. 14-cv-10043 (N.D. Ill. Oct. 31, 2019) ............................................................................... 8

*Lively v. Dynegy, Inc.*,
   No. 05-CV-0063-MJR, 2008 U.S. Dist. LEXIS 75774 (S.D. Ill. Sep. 30, 2008)..................... 14

*Marquez v. Bobak Sausage Co.*,
   No. 2020-CH-4259 (Cir. Ct. Cook Cty., Aug. 21, 2023) .......................................................... 8

*Marshal v. Life Time Fitness, Inc.*,
   No. 2017-CH-14262 (Cir. Ct. Cook Cty. July 30, 2019).......................................................... 12

*McAfee v. Hubbard*,
   No. 14-CV-1010-NJR-RJD, 2017 U.S. Dist. LEXIS 62676 (S.D. Ill. Apr. 25, 2017).............. 8

*McDaniel v. Qwest Communs. Corp.*,
   Civil Action No. 05 C 1008, 2011 U.S. Dist. LEXIS 154591 (N.D. Ill. Aug. 29, 2011) .......... 6

*McGee v. LSC Comms., Inc.*,
   No. 2017-CH-12818 (Cir. Ct. Cook Cty. Aug. 7, 2019) ............................................................ 9

*Meyenburg v. Exxon Mobil Corp.*,
   No. 05-cv-15 DGW, 2006 WL 2191422 (S.D. Ill. July 31, 2006) ............................................ 8

*O'Sullivan, et al. v. WAM Holdings, Inc., d/b/a All Star Management, Inc.*,
   No. 2019-CH-11575 (Cir. Ct. Cook Cty. Sept. 2, 2021) ......................................................... 12

*Pelka v. Saren Restaurants Inc.*,
   No. 2019-CH-14664 (Cir. Ct. Cook Cty. Apr. 9, 2021) .......................................................... 12

*Prelipceanu v. Jumio Corp.*,
   No. 2018-CH-15883 (Cir. Ct. Cook Cty. July 21, 2020)................................................ 9, 12, 14

*Primax Recoveries, Inc. v. Sevilla*,
   324 F.3d 544 (7th Cir. 2003)...................................................................................................... 6

*Rapai v. Hyatt Corp.*,
  No. 2017-CH-14483 (Cir. Ct. Cook Cty. Jan. 26, 2022) ....................................................... 14

*Redman v. RadioShack Corp.*,
  768 F.3d 622 (7th Cir. 2014) ............................................................................................... 6

*Roach v. Walmart Inc.*,
  No. 2019-CH-01107 (Cir. Ct. Cook Cty. June 16, 2021) ...................................................... 14

*Roberts v. Graphic Packaging Int'l., LLC*,
  No. 21-CV-750-DWD, ECF No. 66 (S.D. Ill. Jul. 11, 2024) ....................................... 7, 12, 14

*Rogers v. BNSF Ry. Co.*,
  2023 U.S. Dist. LEXIS 113278 (N.D. Ill. June 30, 2023) ...................................................... 11

*Sekura v. L.A. Tan Enters., Inc.*,
  No. 2015-CH-16694 (Cir. Ct. Cook Cty. Dec. 1, 2016) .................................................... 8, 11

*Silverman v. Motorola Sols., Inc.*,
  739 F.3d 956 (7th Cir. 2013) ............................................................................................... 11

*Sharrieff v. Raymond Management Co., Inc., et al.*,
  No. 2018-CH-01496 (Ill. Cir. Ct., Cook Cty. Aug. 1, 2019) ................................................... 9

*Sherman v. Brandt Industries USA Ltd.*,
  No. 1:20-cv-01185-MMM-JEH (C.D. Ill. Sep. 15, 2020) .................................................. 8, 12

*Smith v. Pineapple Hospitality Grp.*,
  No. 2018-CH-06589 (Cir. Ct. Cook Cty. Jan. 22, 2020) ......................................................... 9

*Spano v. Boeing Co.*,
  No. 06-CV-743-NJR-DGW, 2016 U.S. Dist. LEXIS 161078 (S.D. Ill. Mar. 31, 2016) .......... 14

*Sutton v. Bernard*,
  504 F.3d 688, 691 (7th Cir. 2007) ..................................................................................... 5, 9

*Svagdis v. Alro Steel Corp.*,
  No. 2017 CH 12566 (Cir. Ct. Cook Cty. Jan. 14, 2019) .......................................................... 8

*Sykes v. Clearstaff, Inc.*,
  No. 2019-CH-03390 (Cir. Ct. Cook Cty. Jan 5, 2021) .......................................................... 12

*Taubenfeld v. Aon Corp.*,
  415 F.3d 597 (7th Cir. 2005) ................................................................................................. 9

*Trotter v. Summit Staffing,*
  No. 2019-CH-02731 (Cir. Ct. Cook Cty. Aug. 4, 2020) ........................................................ 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005) ........................................................................................................ 6

*Will v. Gen. Dynamics Corp.*,
  No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349 (S.D. Ill. Nov. 22, 2010) ........................ 14

*Zepeda v. Intercontinental Hotels Group, Inc.*,
  No. 2018-CH-2140 (Cir. Ct. Cook Cty. Dec. 5, 2018) ............................................................ 9

*Zhirovetskiy v. Zayo Group, LLC,* No.
  2017-CH-09323 (Cir. Ct. Cook Cty. Apr. 8, 2019) ....................................................... 9, 12, 14

**Statutes**

740 ILCS 14/1, *et seq.*.................................................................................................................. 1

740 ILCS 14/20 ......................................................................................................................... 5, 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On September 10, 2024, this Court preliminarily approved the class action settlement between Plaintiff Kelsey Hirmer ("Plaintiff" or "Hirmer") and Defendant ESO Solutions, Inc. ("ESO" or "Defendant"), which is a software company that provided the software for the underlying time clock Plaintiff's employer used and which Plaintiff alleged it stored the biometric information collected from the time clock. ECF No. 80.

This Settlement creates a $4,101,300.00 non-reversionary common fund ("Settlement Fund") to compensate 6,414 individuals for ESO's alleged violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq. See* ECF No. 54.

If finally approved, all Settlement Class Members who do not timely exclude themselves from the Settlement ("Settlement Class Participants") will automatically receive an equal, *pro rata* distribution of the Settlement Fund, without the need to file a claim or any other paperwork. Plaintiff estimates each Settlement Class Participant will receive a check for approximately $401. In addition, ESO will permanently delete any data generated from the connection with the ePro BioClock which is hosted on servers leased or owned by ESO or will request that its customers do so directly. *App. 1* at §XVII.93.  Finally, since ESO is the software provider and not the employer, the settlement agreement explicitly excludes the employers from the release.  Thus, Plaintiff and Settlement Class Members may still pursue BIPA claims against their employers.

Apart from this significant relief, it is worth noting the Settlement does not contain any clear sailing agreement as to the requested attorney's fees or incentive award, both of which were expressly set forth in the class notice approved by the Court as both the percentage and dollar

- 1 -

225565

amount. Along that line, this Motion will be posted to the Settlement Website so that any class member may review it before deciding whether to remain part of the Settlement Class or object.

As compensation for the substantial benefit conferred upon the Settlement Class, Class Counsel respectfully move the Court for an award of attorneys' fees of $1,463,024.88, which represents 36% of the settlement fund net administration costs,[1] plus $16,412.62 for counsel's out-of-pocket costs.[2] *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in consumer class action seeking statutory damages of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million.)

This request should be approved because it represents (1) the market rate for this type of settlement and (2) a reasonable and appropriate amount in light of the substantial risks presented in prosecuting this action, as well as the quality and extent of work Class Counsel performed. Class Counsel also respectfully move the Court for a service award of $10,000 to Plaintiff Hirmer for her work on behalf of the Settlement Class. As explained below, this service award is comparable to, or less than, those awarded in many class actions in this Circuit.

## II.    RELEVANT BACKGROUND

### A.  Procedural History.

On January 24, 2022, Plaintiff commenced this class action in the Circuit Court of Cook County. ESO removed the case to this Court on February 22, 2022. *See* ECF No. 1.

On April 15, 2022, ESO moved to stay this case pending the Illinois Appellate Court's resolution of *Tims v. Black Horse Carriers, Inc.* and *Cothron v. White Castle Sys. See* ECF No.

---

[1] A $4,101,300.00 fund minus $37,342 in administration costs equals $4,063,958.00, of which 36% equates to $1,463,024.88.

[2] These expenses are largely the filing fee and mediation costs, but do not include any internal costs such as copying, legal research, or telephone costs. *See* Declaration of Keith J. Keogh ("Keogh Decl."), attached as *Appendix 1*, ¶ 32.

- 2 -

20. The Court denied this Motion on April 18, 2022, and entered a case management schedule.

On May 5, 2022, ESO filed a motion to dismiss under Rule 12(b)(6). *See* ECF Nos. 22-23 (motion and supporting memorandum). On May 31, 2022, while Plaintiff was in the midst of preparing her response to the motion to dismiss, ESO filed a second motion to stay the case (the "Second Stay Motion") pursuant to the *Colorado River* doctrine pending the resolution of a separate BIPA class action Plaintiff is litigating against her former employer in state court (the "State Court Action"). *See* ECF Nos. 27-28 (Second Stay Motion and supporting memorandum. On June 2, 2022, the Court stayed the briefing on the ESO's motion to dismiss and entered a briefing schedule on the Second Stay Motion. *See* ECF No. 29. On July 13, 2022, the Court granted the Second Stay Motion.

The Parties subsequently agreed to mediate this dispute on July 18, 2023, before the Honorable James Holderman (ret.) of Judicial Arbitration and Mediation Services, Inc. ("JAMS"). Over the weeks leading up to the mediation, the Parties exchanged information regarding the estimated size of the proposed Class and submitted detailed briefs setting forth their respective views on the strengths of their cases.[3] At mediation, the Parties discussed their relative views of the law and the facts and Plaintiff's theory regarding potential relief for the proposed Class. But after an all-day, highly adversarial mediation, the Parties were unable to bridge the gap between their respective positions.[4] Nevertheless, the parties continued their settlement efforts over the ensuing two weeks before reaching an agreement-in-principle on August 1, 2023 with the assistance of Judge Holderman.[5] After doing so, the Parties continued extensive negotiations over

---

[3] *See App. 1* (Keogh Decl.), ¶ 16.
[4] *Id.* at ¶ 17.
[5] *Id.* at ¶ 18.

- 3 -

the next seven and a half months on their remaining points of dispute,[6] which culminated in the fully executed Agreement, a copy of which is attached hereto as *Appendix 2*.

Following the execution of the Agreement, Plaintiff's counsel spent the next two-and-a-half months engaging in third-party discovery to confirm which individuals should be included in the Settlement Class, obtain contact information for the Settlement Class members, which entailed the issuance of seventeen subpoenas, multiple Rule 37.2 conferences, and motion practice to compel with respect to information Plaintiff requested from third parties.[7] As a result of these efforts, the parties were able to finalize the list of individuals in the Settlement Class, *i.e.,* individuals who used an ePro BioClock in Illinois during the relevant time period and had their finger-scan data hosted on a server owned or leased by ESO.

**B. Class Counsel negotiated an extremely favorable Settlement.**

The Settlement requires ESO to create a non-reversionary Settlement Fund of $4,101,300.00, from which each Settlement Class Member will receive a *pro rata* portion after payment of Settlement Administration Expenses, attorney's fees and costs, and any incentive award approved by the Court. *See App. 2* (Agreement) at §§ II.37, V.54-58, XI.73-74.

No amount of the Settlement Fund will revert to ESO, and Settlement Class Members are not required to submit a claim or take any action to receive compensation. Instead, the Settlement Administrator will automatically issue checks to the last known address of each Settlement Class Member who declines to opt out. *Id.* at §§ II.30, XI.73. If, after the 180 day check expiration date, there will be a second distribution to the class members who cased there checks provided the remaining money in the Settlement Fund is sufficient to pay at least five dollars ($5.00) (the

---

[6] *Id.*
[7] *Id.* at ¶ 19.

- 4 -

225565

"Second Distribution"). *Id*. at § XI.74. If not, the money will be donated via cy pres, which is identified in the notice,

Thus, each of the 6,414 Settlement Class Members stands to receive approximately $401 after deductions for Notice and Administration costs, approved attorneys' fees, litigation expenses, and a court-approved Service Award. This is an outstanding result, given that BIPA provides $1,000 in statutory damages for each negligent violation. *See* 740 ILCS 14/20(1).

Apart from this direct cash benefit, the Settlement also provides Settlement Class Members with prospective relief. Specifically, the Agreement provides that within thirty days of the entry of the preliminary approval order, ESO will permanently delete any data generated in connection with the ePro BioClock which is hosted on servers leased or owned by ESO or will request that its customers do so directly. *App. 2* at §XVII.93.[8] The release also excludes the employers.

## III. ARGUMENT

### A. Attorney fees based on a percentage of the common fund are appropriate.

The Seventh Circuit has followed the Supreme Court in holding when counsel's efforts result in a common fund that benefits class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for

---

[8] This provision carves out the data collected from Plaintiff's prior employer, which is being retained in connection with a pending BIPA class action Plaintiff brought against that employer in state court (the "State Court Action"). *App. 2* at §XVII.93. Pursuant to the Agreement, ESO will permanently delete this data once the State Court Action is resolved. *Id.*

- 5 -

the class's benefit"); *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003)(creation of a common fund "entitles [counsel] to a share of that benefit as a fee").

The Seventh Circuit "favors the percentage-of-the-fund fee in common fund cases because it provides the best hope of estimating what a willing seller and a willing buyer seeking the largest recovery in the shortest time would have agreed to ex ante." *In re FedEx Ground Package System, Inc. Employment Practices Litig.*, 251 F. Supp. 3d 1225, 1236 (N.D. Ind. 2017) (citing *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 ("*Synthroid II*") (7th Cir. 2003)); *In re Capital One Tel. Consumer Prot. Act Litig.* ("*In re Capital One*"), 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of the market rate" and that, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions"); *see also Hale v. State Farm Mutual Automobile Insurance Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *27 (S.D. Ill. Dec. 13, 2018) ("The percentage method makes sense because it is essentially unheard of for sophisticated lawyers to take on a case of this magnitude and type on any basis other than a contingency fee, expressed as a percentage of the relief obtained.").[9]

---

[9] In fact, the Seventh Circuit has cast doubt on the continued relevance of the lodestar method. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014) (rejecting justification for attorneys' fees based on "amount of time that class counsel reported putting in on the case," and stating "the reasonableness of a fee cannot be assessed in isolation from what it buys"); *Synthroid II,* 325 F.3d at 979-80 ("The client cares about the outcome alone" and class counsel's efficiency should not be used "to reduce class counsel's percentage of the fund that their work produced."). The trend in other circuitsis to use the percentage of the fund method, as well. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001); *see also McDaniel v. Qwest Communs. Corp.,* Civil Action No. 05 C 1008, 2011 U.S. Dist. LEXIS 154591, at *11 (N.D. Ill. Aug. 29, 2011) ("Many courts have found the percentage-of-recovery method provides a good emulation of the real-world market value of attorneys' services provided on a contingent basis."). (Pallmeyer,

- 6 -

As such, courts in this Circuit routinely apply the percentage of the common fund method and have noted the advantages of this approach. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (describing advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic decision-making); *see also Bryant v. Loews Chicago Hotel, Inc.,* No. 1:19-cv-03195, ECF No. 77 (N.D. Ill. Oct. 30, 2020); *Dixon v. Smith Senior Living*, No. 1:17-cv-08033, ECF No. 103 (N.D. Ill. Aug. 20, 2019). Thus, the Court should use the percentage of the fund approach to determine a reasonable fee award in this case.

**B. Class Counsel's request is within the market rate.**

In applying the percentage of the common fund approach, the Court must decide what percentage of the common fund is appropriately awarded as attorney's fees.

**1. Analysis of the relevant market for legal services supports the fee request.**

In consumer class actions, the Seventh Circuit has held 36% of the common fund minus administration costs is reasonable. *See Birchmeier*, 896 F.3d at 796-97 (affirming attorney fees in consumer statutory class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million).

The district courts have followed *Birchmeier* and routinely awarded 36% net administration costs in consumer class actions, including those arising under BIPA. *Roberts v. Graphic Packaging Int'l., LLC,* No. 21-CV-750-DWD, ECF No. 66 (S.D. Ill. Jul. 11, 2024)

---

J.).

225565

(Dugan, J.) (awarding fee award of 36% of net common fund in BIPA dispute); *Sherman v. Brandt Industries USA Ltd.*, No. 1:20-cv-01185-MMM-JEH, ECF No. 85 (C.D. Ill. Sep. 15, 2020) (Mihm, J.) (same); *McAfee v. Hubbard*, 2017 U.S. Dist. LEXIS 62676, at *11 (S.D. Ill. Apr. 25, 2017) (approving fee award of approximately 36% of total settlement fund); *Guzman v. National Packaging Services Corp.*, No. 19-cv-1722-pp, 2022 U.S. Dist. LEXIS 120514, at *14-15 (E.D. Wis. July 8, 2022) (same, in FLSA action); *Legg v. PTZ Ins. Agency, Ltd, et al.*, No. 14-cv-10043, ECF No. 469 (N.D. Ill. Oct. 31, 2019) (same, in TCPA action); *Gebka v. Allstate Corp.*, Case No. 19cv6662, ECF No. 145 (N.D. Ill. Sep. 27, 2022) (same); *Gaskill*, 160 F.3d at 362–63 (affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Meyenburg v. Exxon Mobil Corp.*, No. 05-cv-15 DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation"). It is worth noting that some of the above rates were prior to the Seventh Circuit requiring administration costs to be deducted first. Thus, the fees approved in the preceding cases would be at a higher percentage if they were recalculated to control for administration costs.

In addition, the 36% sought here is less than the percentage of the gross (rather than net) settlement fund commonly awarded by Illinois courts in similar BIPA cases. *See, e.g., Marquez v. Bobak Sausage Co.*, No. 2020-CH-4259 (Cir. Ct. Cook Cty. Aug. 21, 2023) (in BIPA case, awarding 40% of total fund); *Heidelberg v. Forman Mills Inc.,* No. 2020-CH-04079 (Cir. Ct. Cook Cty. Aug. 22, 2023) (same); *Sekura v. L.A. Tan Enters., Inc.,* No. 2015-CH-16694 (Cir. Ct. Ill. Dec. 1, 2016) (same); *Svagdis v. Alro Steel Corp.*, No. 2017-CH-12566 (Cir. Ct. Cook Cty. Jan. 14, 2019) (same); *Zhirovetskiy v. Zayo Group, LLC*, No. 2017-CH-09323 (Cir. Ct. Cook

- 8 -

Cty. Apr. 8, 2019) (same); *McGee v. LSC Comms., Inc.*, No. 2017-CH-12818 (Cir. Ct. Cook Cty. Aug. 7, 2019) (same); *Zepeda v. Intercontinental Hotels Group, Inc.*, No. 2018-CH-2140 (Cir. Ct. Cook Cty. Dec. 5, 2018) (same); *Smith v. Pineapple Hospitality Grp.*, No. 2018-CH-06589 (Cir. Ct. Cook Cty. Jan. 22, 2020) (same); *Prelipceanu v. Jumio Corp.*, No. 2018-CH-15883 (Cir. Ct. Cook Cty. July 21, 2020) (same); *Freeman-McKee v. Alliance Ground Int'l, LLC,* No. 2017-CH-13636 (Ill. Cir. Ct., Cook Cty. June 15, 2021) (same); *Knobloch v. ABC Financial Services, LLC*, No. 2017-CH-12266 (Ill. Cir. Ct., Cook Cty. June 25, 2021) (same); *Sharrieff v. Raymond Management Co., Inc., et al.*, No. 2018-CH-01496 (Ill. Cir. Ct., Cook Cty. Aug. 1, 2019).

Accordingly, the prevailing market rate for contingency fee cases generally, and for BIPA class actions in particular, both confirm the reasonableness of the requested fee award.

### 2. The risk of non-payment also supports the requested fee award.

The reasonableness of the requested fee award is further bolstered by the significant risk of non-payment Class Counsel faced at the outset. *See Taubenfeld*, 415 F.3d at 600 (approving district court's reliance on this factor in evaluating attorneys' fees); *In re Synthroid Mktg. Litig.* ("*Synthroid I"*), 264 F.3d 712, 718 (court should "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers … at the outset of the case (that is, when the risk of loss still existed)").

By taking this case on a contingency fee basis, Class Counsel assumed the risk they would receive no payment for their services. *See Sutton*, 504 F.3d at 693-94 ("We recognize that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit.").

As discussed in Plaintiff's motion for preliminary approval, ESO raised several legal and factual defenses that, if successful, would have precluded any recovery in this case. Specifically,

225565

ESO argued the finger-scan information allegedly captured in connection with the ePro BioClock does not fall within the statutory definition of "biometric identifiers" or "biometric information." *See* ECF No. 31 at 22. ESO also argued, among other things: (1) ESO is merely a passive technology vendor, and thus did not take an "active step" towards collecting and storing Plaintiff's and the Settlement Class's alleged biometric data; (2) the extraterritoriality doctrine barred Plaintiff's claim because any alleged biometric collection or storage on ESO's systems, if any, part took place outside of Illinois; (3) Plaintiff and the Settlement Class consented to any collection of their alleged biometric data (if any) and waived their claims under BIPA; and (4) Plaintiff's claims were barred because the data at issue falls within the healthcare exemption in Section 10 of the BIPA, as any alleged collection of their data was for healthcare treatment, payment, or operations as those terms are defined under HIPAA. A victory on these defenses could doom the case in its entirety or greatly reduce the size of the proposed class. *See In re Southwest Airlines Voucher Litig.*, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval.").

While Class Counsel remain confident Plaintiff would have prevailed, success, especially at the outset of the case, was by no means assured. To the contrary, the risk of loss was particularly acute given the dearth of legal authority on ESO's defenses. *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) ("Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel.").

Apart from jeopardizing any recovery for the class, litigating those issues would have required Class Counsel to expend significantly more time, money, and resources—including potentially substantial expert fees—for which they would receive no compensation upon losing at

- 10 -

225565

summary judgment, class certification, or trial. *See App. 1* (Keogh Decl.), ¶¶ 23, 25-27; *In re AT&T*, 792 F. Supp. 2d at 1035-35 (finding significant risk of nonpayment where, among other reasons, counsel would have to overcome case dispositive defenses and certify a class). As such, the considerable risk Class Counsel faced in prosecuting this action on a contingency fee basis illustrates the reasonableness of the requested fee award.

### 3. The benefits conferred on the Settlement Class support the requested fee award.

The quality of Class Counsel's performance, as demonstrated by the Settlement itself, further supports the requested fee award. As noted above, each Settlement Class Member will net $401 after Court-approved reductions for attorneys' fees and expenses, a Service Award for Plaintiff, and Administration Expenses. These payments will arrive via check, without the need to submit a claim form (or take any other steps, for that matter).

This is an outstanding result when viewed against the potential $1,000 recovery Plaintiff could have obtained had she proven a negligent violation of BIPA at summary judgment or trial *after* prevailing at class certification, *see* 740 ILCS 14/20(1), which would have entailed years of additional litigation. That is particularly true given that ESO would certainly seek a reduction of damages based on the argument an award of $1,000 per violation would violate its rights to due process under the Illinois and United States Constitution. *See Cothron v. White Castle Sys.*, 2023 IL 128004, ¶ 42; *see also Rogers v. BNSF Ry. Co.*, 2023 U.S. Dist. LEXIS 113278, *30 (N.D. Ill. June 30, 2023) (vacating damage award and ordering new jury trial limited to damages).[10]

What's more, the net recovery of $401 afforded by the Settlement is in line with — if not superior to — the per-claimant recoveries obtained in analogous BIPA class actions. *See Sekura,*

---

[10] Plaintiff respectfully disagrees damages should be left to the discretion of the jury as *Rogers* found, but instead subject to a Due Process analysis after judgment.

225565

No. 2015-CH-16694 (Cir. Ct. Cook Cty. Dec. 1, 2016) (net recovery of $125 to $150 per claimant); *Zhirovetskiy*, No. 2017-CH-09323 (Cir. Ct. Cook Cty. Apr. 8, 2019) (net recovery capped at $400 per claimant); *Marshal v. Life Time Fitness, Inc.*, No. 2017-CH-14262 (Cir. Ct. Cook Cty. July 30, 2019) (net recovery of approximately $270 per claimant); *Prelipceanu*, No. 2018-CH-15883 (Cir. Ct. Cook Cty. July 21, 2020) (net recovery of $262.28 per claimant); *Trotter v. Summit Staffing*, No. 2019-CH-02731 (Cir. Ct. Cook Cty. Aug. 4, 2020) (net recovery of $102); *Kusinski v. ADP, LLC*, No. 2017-CH-12364 (Cir. Ct. Cook Cty. Feb. 10, 2021) (net recovery of $250 per claimant); *O'Sullivan, et al. v. WAM Holdings, Inc., d/b/a All Star Management, Inc.*, No. 2019-CH-11575 (Cir. Ct. Cook Cty. Sept. 2, 2021) (net recovery of $384.09); *Pelka v. Saren Restaurants Inc.*, No. 2019-CH-14664 (Cir. Ct. Cook Cty. Apr. 9, 2021) (net recovery of $289 per claimant); *Sykes v. Clearstaff, Inc.*, No. 2019-CH-03390 (Cir. Ct. Cook Cty. Jan 5, 2021) (net recovery of $298.04).

Accordingly, the requested fee award is reasonable and should be granted.

### C.  Class Counsel's litigation expenses should be approved.

The Settlement provides that Class Counsel may apply to the Court for payment of litigation expenses. To that end, Class Counsel seeks reimbursement for $16,412.62 of actual costs incurred in prosecuting this action, which include the filing fee, the service of process fee, mediation fees, and the fees involved in serving multiple third-party subpoenas. *See App. 1* (Keogh Decl.), ¶¶ 31-32. Because these charges were necessary in order to litigate and settle the case, Class Counsel's request for reimbursement of those expenses from the gross Settlement Fund is appropriate and should be approved. *See Roberts,* No. 21-CV-750-DWD, ECF No. 66 (Dugan, J.) (awarding counsel litigations expenses in addition to fees in BIPA dispute); *Sherman*, No. 1:20-cv-01185-MMM-JEH, ECF No. 85 (Mihm, J.) (same).

225565

### D. The requested Service Award for Ms. Hirmer should be approved.

Like the proposed fee and expense award, there is no clear sailing or agreement on the Service Award. Instead, the Settlement provides Plaintiff will petition the Court for a Service Award. As such, Settlement Class Members will be given notice Plaintiff is requesting $10,000 for her service to the class. *See* Mail Notice at p.2, attached hereto as *Appendix 3*; Web Notice Web Notice at p.4, §§ 7-8, attached hereto as *Appendix 4*. Such awards are common to incentivize plaintiffs to bring their claims on a class basis, as they reflect the benefit conferred on the class (who likely would recover nothing but for the plaintiff's enforcement of the law on their behalf). *See Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

Plaintiff's role in this litigation was crucial. Though no award of any sort was promised to Plaintiff at any time, she nevertheless sacrificed her time to prosecute this case on behalf of the thousands of individuals who used the ePro BioClock in Illinois, exhibiting a willingness to participate and undertake the responsibilities and risks attendant with bringing a class action. *See App. 1* (Keogh Decl.), ¶ 34. Plaintiff participated in the initial investigation of her claims, provided information to Class Counsel to aid in preparing the initial pleadings, and reviewed the initial pleadings prior to filing. *Id*. In addition, Plaintiff regularly consulted with Class Counsel, and analyzed and approved the Settlement that led to the resolution of this case. *Id*. Because the substantial benefits Settlement Class Members stand to receive under the Settlement would not

- 13 -

225565

exist without Plaintiff's contributions and efforts throughout the litigation, Class Counsel submits the requested Service Award is reasonable and appropriate.

Moreover, the $10,000 Service Award sought here is comparable to or less than others approved by Illinois state and federal courts in similar BIPA disputes, as well as those approved by federal courts throughout the country in analogous class actions. *See, e.g., Roberts,* No. 21-CV-750-DWD, ECF No. 66; *Rapai v. Hyatt Corp.*, No. 2017-CH-14483 (Cir. Ct. Cook Cty. Jan. 26, 2022) (awarding $12,500 incentive award to BIPA class representative); *Heidelberg,* No. 2020-CH-04079 (Cir. Ct. Cook Cty. Aug. 22, 2023) (approving 10,000 service award in BIPA settlement); *Dixon,* No. 1:17-cv- 08033, ECF No. 103 (same); *Prelipceanu*, No. 2018-CH-15883 (Cir. Ct. Cook Cty. July 21, 2020)  (same); *Zhirovetskiy,* No. 2017-CH-09323 (Cir. Ct. Cook Cty. Apr. 8, 2019) (same); *Roach v. Walmart Inc*. No. 2019-CH-01107 (Cir. Ct. Cook Cty. June 16, 2021) (same); *Hale,* 2018 U.S. Dist. LEXIS 210368, at *50 (S.D. Ill. Dec. 13, 2018) (awarding $25,000 incentive award in settlement involving RICO and unjust enrichment claims); *Spano v. Boeing Co.*, No. 06-CV-743-NJR-DGW, 2016 U.S. Dist. LEXIS 161078, at *13 (S.D. Ill. Mar. 31, 2016) (awarding $25,000 to two class representatives and $10,000 to a third in ERISA settlement); *Beesley v. International Paper Co*., 2014 U.S. Dist. LEXIS 12037, at *13 (S.D. Ill. Jan. 31, 2014) (awarding $25,000 and $15,000 in ERISA settlement); *Will v. General Dynamics Corp*., No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *12 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs in ERISA settlement); *Lively v. Dynegy, Inc.*, No. 05-CV-0063-MJR, 2008 U.S. Dist. LEXIS 75774, at *6 (S.D. Ill. Sep. 30, 2008) (awarding $10,000 to both named plaintiffs in ERISA settlement); *Allen v. JPMorgan Chase Bank, NA*, No. 13-8285, ECF No. 93 (N.D. Ill. Oct. 21, 2015) (approving $25,000 service award in TCPA class settlement); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, ECF No. 243 ¶ 20 (N.D. Ill. Feb. 27,

- 14 -

225565

2013) (awarding $30,000 service awards in TCPA class settlement); *see also Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, No. 08CV3610 CLW, 2015 WL 2383358, at *9 (D.N.J. May 18, 2015), *aff'd*, 639 F. App'x 880 (3d Cir. 2016) (awarding $10,000 to class representative in junk fax case); *Lees v. Anthem Ins. Companies Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (awarding $10,000 to class representative in case involving nonconsensual calls to cell phones); *Ikuseghan v. Multicare Health Sys.*, No. C14-5539 BHS, 2016 WL 4363198, at *3 (W.D. Wash. Aug. 16, 2016) (finding a service award of $15,000 reasonable).[11]

The requested service award of $10,000 for Plaintiff is reasonable and should be approved.

IV.    CONCLUSION

WHEREFORE, Plaintiff respectfully requests the Court grant this motion and award Class Counsel $1,463,024.88 in attorneys' fees, which represents 36% of the net Settlement Fund after administration costs are deducted, plus $16,412.62 of counsel's out-of-pocket costs. Class Counsel further requests that the Court approve a service award to Plaintiff Hirmer in the amount of $10,000.

---

[11] *See also Hageman v. AT & T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving $20,000 service award in TCPA class settlement); *Cook*, 142 F.3d at 1016 (affirming $25,000 service award to plaintiff); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection); *Benzion v. Vivint, Inc.*, No. 12-61826, DE 201 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 service award in TCPA class settlement).

225565

Dated: October 1, 2024                    Respectfully submitted,

                                          **KELSEY HIRMER, individually and on behalf of
                                          all others similarly situated,**

                                          By:  /s/ Gregg M. Barbakoff
                                               Keith J. Keogh
                                               Gregg M. Barbakoff
                                               KEOGH LAW, LTD.
                                               55 W. Monroe St., Suite 3390
                                               Chicago, Illinois 60603
                                               Tel.: (312) 726-1092
                                               Fax: (312) 726-1093
                                               keith@keoghlaw.com
                                               gbarbakoff@keoghlaw.com

                                          *Attorneys for Plaintiff and the Proposed Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on **October 1, 2024**, I caused a copy of the foregoing document, along with any attached exhibits, to be served upon all counsel of record via electronic filing using the CM/ECF system.

/s/ Gregg M. Barbakoff