**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KELSEY HIRMER, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 22-cv-01018 |
| *Plaintiff,* | ) ) ) | Hon. LaShonda A. Hunt. Presiding Judge |
| v. | ) | |
| ESO SOLUTIONS, INC. d/b/a ECORE SOLUTIONS, INC., | ) ) ) | |
| *Defendant.* | ) ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT
## OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

228416

TABLE OF CONTENTS

I.     INTRODUCTION ...............................................................................................................1

II.    RELEVANT BACKGROUND.........................................................................................2

       A.     The Biometric Information Privacy Act.................................................................2

       B.     Plaintiff's allegations ............................................................................................3

       C.     Procedural History .................................................................................................4

       D.     The proposed Settlement ........................................................................................6

              1.     The Settlement Class ..................................................................................6

              2.     Monetary relief for Settlement Class Members .........................................6

              3.     Prospective Relief.......................................................................................7

              4.     *Cy pres* distributions................................................................................7

              5.     Settlement Class release .............................................................................8

              6.     Class Representative Service Award costs .................................................9

              7.     Attorneys' fees and costs ............................................................................9

II.    ARGUMENT ...................................................................................................................10

       A.     The settlement approval process...........................................................................10

       B.     The Settlement is Fair, Reasonable, Adequate, and Should be Approved...........11

              1.     The Class has been adequately represented ............................................11

              2.     The Settlement resulted from arm's length negotiations.........................12

              3.     The proposed Settlement treats Settlement Class Members equally........13

              4.     The relief provided to the Settlement Class is more than adequate ........13

                     a.     The risks of continued litigation favor approval ........................15

                     b.     The proposed method of distribution is effective........................17

                     c.     The proposed attorney fee award and timing of payment............17

IV.    CONCLUSION ...............................................................................................................20

i

# **TABLE OF AUTHORITIES**

## **Cases**

*Aranda v. Caribbean Cruise Line, Inc.,*
  No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400 (N.D. Ill. Mar. 2, 2017)................................13

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ...............................................................10

*Beesley v. Int'l Paper Co.,*
  2014 U.S. Dist. LEXIS 12037 (S.D. Ill. Jan. 31, 2014) .........................................19

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  896 F.3d 792 (7th Cir. 2018) ...........................................................9, 18

*Chambers v. Together Credit Union,*
  No. 19-CV-00842-SPM, 2021 U.S. Dist. LEXIS 92150 (S.D. Ill. May 14, 2021) .................17

*Donahue v. Everi Holdings, Inc.,*
  No. 2018-CH-15419 (Cir. Ct. Cook Cnty. Dec. 3, 2020) .......................................18

*Cothron v. White Castle Sys.,*
  2023 IL 128004...........................................................................16

*Felzen v. Andreas*,
  134 F.3d 873 (7th Cir. 1998) .............................................................10

*Fournigault v. Independence One Mortgage Corp.*,
  234 F.R.D. 641 (N.D. Ill. 2006)...........................................................11

*Gaskill v. Gordon*,
  942 F. Supp. 382 (N.D. Ill. 1996) ........................................................18

*Gebka v. Allstate Corp.,*
  Case No. 19cv6662, ECF No. 145 (N.D. Ill. Sep. 27, 2022)...................................18

*Goldsmith v. Technology Solutions Co.*,
  No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995)...................10, 16

*Guzman v. National Packaging Services Corp.,*
  No. 19-cv-1722-pp, 2022 U.S. Dist. LEXIS 120514 (E.D. Wis. July 8, 2022) .....................18

*Hale v. State Farm Mut. Auto. Ins. Co.,*
  No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018) .................17, 19

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010) ............................................................................13

*In re Google LLC Street View Electronic Communications Litigation,*
  No. 3:10-md-02184, 2020 U.S. Dist. LEXIS 47928 (N.D. Cal. Mar. 18, 2020) ......................14

*In re Southwest Airlines Voucher Litig.*,
  11 C 8176, 2013 U.S. Dist. LEXIS 120735 (N.D. Ill. Dec. 6, 2013) ........................................2

*In re Southwest Airlines Voucher Litig.*,
  2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ........................................................................16

*Ira Holtzman, C.P.A., & Assocs. v. Turza*,
  728 F.3d 682 (7th Cir. 2013) ..................................................................................................7

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ................................................................................................10

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ................................................................................................18

*Kusinski v. ADP, LLC*,
  2017-CH-12364 (Cook Cnty. Feb. 10, 2021) .......................................................................14

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ................................................................................................14

*Legg v. PTZ Ins. Agency, Ltd, et al.*,
  No. 14-cv-10043, ECF No. 469 (N.D. Ill. Oct. 31, 2019) .....................................................18

*Marquez v. Bobak Sausage Co.*,
  No. 2020-CH-4259 (Cir. Ct. Cook Cnty. Aug. 21, 2023) .....................................................18

*Marshal v. Life Time Fitness, Inc.*,
  2017-CH-14262 (Cir. Ct. Cook Cty. July 30, 2019) .............................................................14

*Martin v. Safeway, Inc.*,
  20-CH-5480 (Cir. Ct. Cook Cnty. 2022) ..............................................................................18

*McAfee v. Hubbard*,
  No. 14-CV-1010-NJR-RJD, 2017 U.S. Dist. LEXIS 62676 (S.D. Ill. Apr. 25, 2017) ...........18

*McGee v. LSC Comms., Inc.*,
  No. 2017-CH-12818 (Cir. Ct. Cook Cnty. Aug. 7, 2019) .....................................................18

iii

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ............................................................................................................. 13

*O'Sullivan, et al. v. WAM Holdings, Inc., d/b/a All Star Management, Inc.*,
    2019-CH-11575 (Cir. Ct. Cook Cnty. Sept. 2, 2021) ......................................................... 14

*Pelka v. Saren Restaurants Inc.*,
    No. 2019-CH-14664 (Cir. Ct. Cook Cnty. Apr. 9, 2021) ..................................................... 14

*Prelipceanu v. Jumio Corp.*,
    2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) .......................................................... 14

*Rapai v. Hyatt Corp.*,
    No. 2017-CH-14483 (Cir. Ct. Cook Cty. Jan. 26, 2022) ..................................................... 19

*Richardson v. Ikea North America Servs.*,
    No. 21-CH-5392 (Cir. Ct. Cook Cnty. 2023) ...................................................................... 18

*Rogers v. BNSF Ry. Co.*,
    2023 U.S. Dist. LEXIS 113278 (N.D. Ill. June 30, 2023) ................................................... 16

*Rysewyk v. Sears Holdings Corp.*,
    2019 U.S. Dist. LEXIS 236004 (N.D. Ill. Jan. 29, 2019) .................................................... 11

*Sanchez v. Elite Labor Services d/b/a Elite Staffing, Inc. and Visual Pak Company*,
    No. 2018-CH-02651 (Cir. Ct. Cook Cnty. Aug. 10, 2021) .................................................. 14

*Schulte v. Fifth Third Bank*,
    No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810 (N.D. Ill. Sept. 10, 2010) ...................... 13

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................................. 16

*Sekura v. L.A. Tan Enters., Inc.*,
    2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) ..................................................... 13, 18

*Sherman v. Brandt Industries USA Ltd.*,
    No. 1:20-cv-01185-MMM-JEH, ECF No. 85 (C.D. Ill. Sep. 15, 2020) ............................... 18

*Snyder v. Ocwen Loan Servicing, LLC*,
    No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926 (N.D. Ill. May 14, 2019) .............................. 13

*Spano v. Boeing Co.*,
    No. 06-CV-743-NJR-DGW, 2016 U.S. Dist. LEXIS 161078 (S.D. Ill. Mar. 31, 2016) ........... 19

*Svagdis v. Alro Steel Corp.,*
  No. 2017-CH-12566 (Cir. Ct. Cook Cnty. Jan. 14, 2019) ...................................................... 18

*Sykes v. Clearstaff, Inc.,*
  2019-CH-03390 (Cir. Ct. Cook Cnty. Jan 5, 2021) .................................................................. 14

*Trotter v. Summit Staffing,*
  2019-CH-02731 (Cir. Ct. Cook Cnty. Aug. 4, 2020) ............................................................... 14

*Will v. General Dynamics Corp.,*
  No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349 (S.D. Ill. Nov. 22, 2010) ......................... 19

*Wong v. Accretive Health, Inc.,*
  773 F.3d 859 (7th Cir. 2014) .................................................................................................... 11

*Zhirovetskiy v. Zayo Group, LLC,*
  No. 2017-CH-09323 (Cir. Ct. Cook Cnty. Apr. 8, 2019) ........................................................ 18

## Rules

Fed. R. Civ. P. 23 ............................................................................................................... passim

Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment .......................... 15, 16

## Statutes

740 ILCS 14/1, *et seq.* ....................................................................................................... passim

## Treatises

NEWBERG ON CLASS ACTIONS (4th ed. 2002) ............................................................................ 10

4 NEWBERG ON CLASS ACTIONS  (5th ed.) ................................................................................. 17

## Other Authorities

Illinois House Transcript, 2008 Reg. Sess. No. 276 (May 30, 2008) ............................................ 2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff Kelsey Hirmer ("Plaintiff" or Hirmer") respectfully moves the Court for final approval of the class action settlement ("Settlement") reached between Plaintiff and Defendant ESO Solutions, Inc. ("ESO" or "Defendant"), (collectively, the "Parties") attached as **Appendix 1**.

ESO is the software provider of Hirmer's employer.  Hirmer alleges ESO violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* by collecting the Class's fingerprints without complying with the statute's informed consent regime or adhering to a publicly-available policy governing the retention and destruction of this highly-sensitive data.

The Settlement provides $4,101,300.00 in a non-reversionary fund for 6,414 individuals. If approved, each Class Member will receive an equal, *pro-rata* distribution without the need to have filed a claim or take any other action. Plaintiff estimates every class member would receive $401, an amount in line with (if not superior to) other analogous BIPA settlements especially in light of the fact the class did not release their claims against their employers such that they can still seek to recover against their employer for any BIPA claim they may have.

On September 10, 2024, the Court granted preliminary approval of the Settlement, finding the settlement within the range of reasonableness, and thus the class should be given notice of the Settlement and an opportunity to object or opt out. ECF No. 80.

Per the Court-approved notice plan, direct individual notice was mailed to 6,409 Settlement Class Members for who addresses were able to be located. *See* **Appendix 2**, Declaration of Jay Geraci ("Geraci Decl.") at ¶¶ 5-6.

1

The notice advised the class of the terms of the settlement, the estimated recovery as well as the exact amount in both a percentage and dollar amount of the requested attorney fee as well as the requested incentive award. Along that line, Plaintiff filed her motion for attorney fees and incentive award (ECF. No. 81), which was posted to the settlement website for class members to review the day that notice was mailed. *See* https://www.esobipasettlement.com/case-documents.aspx (last visited December 24, 2024).

No class member objected to any portion of the Settlement and only one class member opted out. *See* **App. 2** (Geraci Decl.), ¶¶ 11-12. This complete absence of objections points to the reasonableness of the Settlement. *See In re Southwest Airlines Voucher Litig*., No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Dec. 6, 2013) (finding even "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement").

As demonstrated below, the significant relief provided by the Settlement, along with its equitable and effective method of distribution, is a great result for the Settlement Class, particularly in view of the risks and delays involved in litigating the substantive merits of these claims.

For the foregoing reasons, and as detailed below, the Settlement meets the standards for final approval, and should therefore be approved.

## II.    RELEVANT BACKGROUND

### A.  The Biometric Information Privacy Act.

The growing use of biometric data in commercial transactions implicates unique privacy concerns. Unlike other forms of personally-identifiable information, biometric information such as fingerprints cannot be changed when stolen. Recognizing the "very serious need of protections for the citizens of Illinois when it comes to biometric information," the legislature passed BIPA in 2008 to provide heightened protections for biometric privacy rights. *See* Illinois House Transcript,

2

2008 Reg. Sess. No. 276, p.249 (May 30, 2008); *see also* 740 ILCS 14/5(g).

As relevant to this case, Section 15(b) prohibits a private entity from collecting an individual's biometric information without first: (1) providing the individual with a written disclosure explaining that biometric information is being collected, the reason for the collection, and the length of time for which the biometric information will be retained; and (2) obtaining a signed written release from the individual or the individual's authorized representative authorizing the collection. 740 ILCS 14/15(b).

Section 15(a) of BIPA requires a private entity to establish a written policy establishing a retention schedule and guidelines for permanently destroying the biometric information once the purpose for which it was collected has been satisfied or within three years of the individual's last interaction with the private entity, whichever occurs first. *See* 740 ILCS 14/15(a).

**B. Plaintiff's allegations.**

ESO Solutions, Inc. ("ESO") is a Texas-based company that offers an integrated suite of software products, including scheduling software, for EMS agencies, fire departments, and hospitals. Plaintiff alleges one such solution is a biometric timeclock known as the ePro BioClock, which, in conjunction with ESO's scheduling platform, allegedly verifies the user's identity through a fingerprint scanner.

Plaintiff contends that during her employment with one of ESO's customers, her employer, Elite Medical Transportation Providers, LLC ("Elite") required Plaintiff and her co-workers to track their time and attendance by scanning their fingerprints into the ePro BioClock. *See* ECF No. 1 at Ex. A (Compl.), ¶ 24. As such, Plaintiff alleges ESO unlawfully captured, collected, and stored her fingerprint data (along with every other Settlement Class Member's). *Id.*, ¶¶ 23-26. ESO denies these allegations.

3

228186

According to Plaintiff, ESO's systematic collection and storage of the Settlement Class's highly sensitive biometric data violated BIPA in two discrete ways. First, Plaintiff alleges ESO violated Section 15(a) of the statute by failing to implement and adhere to a publicly available policy governing the retention and destruction of the biometric data in its possession. *Id.* at ¶¶ 13, 21, 30-31, 38-44. Second, Plaintiff alleges ESO violated Section 15(b) by collecting, storing, and using the Settlement Class's biometric data without first providing the necessary disclosures or receiving informed written consent. *Id.*, at ¶¶ 13, 21, 24-25, 27-29, 47-54.

ESO has consistently denied these allegations, disputes liability in this case, and maintains that it had no obligation to comply with BIPA in connection with the facts alleged.

## C. Procedural History.

On January 24, 2022, Plaintiff commenced this class action in the Circuit Court of Cook County. ESO removed the case to this Court on February 22, 2022. *See* ECF No. 1.

On April 15, 2022, ESO moved to stay this case pending the Illinois Appellate Court's resolution of *Tims v. Black Horse Carriers, Inc.* and *Cothron v. White Castle Sys. See* ECF No. 20. The Court denied this Motion on April 18, 2022, and entered a case management schedule.

On May 5, 2022, ESO filed a motion to dismiss under Rule 12(b)(6). *See* ECF Nos. 22-23 (motion and supporting memorandum). On May 31, 2022, while Plaintiff was in the midst of preparing her response to the motion to dismiss, ESO filed a second motion to stay the case (the "Second Stay Motion") pursuant to the *Colorado River* doctrine pending the resolution of a separate BIPA class action Plaintiff brought litigating against her former employer in state court (the "State Court Action"). *See* ECF Nos. 27-28 (Second Stay Motion and supporting memorandum). On June 2, 2022, the Court stayed the briefing on the ESO's motion to dismiss and entered a briefing schedule on the Second Stay Motion. *See* ECF No. 29. On July 13, 2022, the

228186

4

Court granted the Second Stay Motion.

The Parties subsequently agreed to mediate this dispute on July 18, 2023, before the Honorable James Holderman (ret.) of Judicial Arbitration and Mediation Services, Inc. ("JAMS"). Over the weeks leading up to the mediation, the Parties exchanged information regarding the estimated size of the proposed Class and submitted detailed briefs setting forth their respective views on the strengths of their cases.[1] At mediation, the Parties discussed their relative views of the law and the facts and Plaintiff's theory regarding potential relief for the proposed Class. But after an all-day, highly-adversarial mediation, the Parties were unable to bridge the gap between their respective positions.[2] Nevertheless, the parties continued their settlement efforts over the ensuing two weeks before reaching an agreement-in-principle on or about August 1, 2023 with the assistance of Judge Holderman.[3] After doing so, the Parties continued extensive negotiations over the next seven and a half months on their remaining points of dispute,[4] which culminated in the fully executed Agreement, a copy of which is attached hereto as **Appendix 1**.

Following the execution of the Agreement, Plaintiff's counsel spent the next two-and-a-half months engaging in third-party discovery to confirm which individuals should be included in the Settlement Class, obtain contact information for the Settlement Class members, which entailed the issuance of seventeen subpoenas, multiple Rule 37.2 conferences, and motion practice to compel with respect to information Plaintiff requested from third parties.[5] As a result of these efforts, the parties were able to finalize the list of individuals in the Settlement Class, *i.e.,*

---

[1] *See* Declaration of Keith J. Keogh ("Keogh Decl.") attached as **Appendix 3**, ¶ 16.
[2] *Id.* at ¶ 17.
[3] *Id.* at ¶ 18.
[4] *Id.*
[5] *Id.* at ¶ 19.

5

individuals who used an ePro BioClock in Illinois during the relevant time-period and had their finger-scan data hosted on a server owned or leased by ESO, in order to send direct notice to the class.

### D. The proposed Settlement.

The following summarizes the Agreement's terms:

#### 1. The Settlement Class.

The Settlement Class preliminarily approved by the Court is defined as:

> All individuals who scanned their finger in connection with their use of an ePro BioClock in Illinois and whose finger-scan data was hosted on a server owned or leased by ESO from January 24, 2017, to the date the Court enters the Preliminary Approval Order. The Settlement Class does not encompass individuals who may have used an ePro BioClock in Illinois but did not have their finger-scan data hosted on a server owned or leased by ESO.

**App. 1** at §§ II.31.[6] The Settlement Class consists of 6,414 individuals. *See* **App. 3** (Keogh Decl.), ¶ 22.

#### 2. Monetary relief for Settlement Class Members.

The Settlement requires ESO to create a non-reversionary Settlement Fund of $4,101,300.00, from which each Settlement Class Member will receive a *pro rata* portion after payment of Settlement Administration Expenses, attorney's fees and costs, and any incentive award approved by the Court. *See* **App. 1** (Agreement) at §§ II.37, V.54-58, XI.73-74. No amount of the Settlement Fund will revert to ESO, and Settlement Class Members are not required to submit a claim or take any action to receive compensation. Instead, the class administrator ("Administrator") will automatically issue checks to the last known address of each Settlement

---

[6] Excluded from the Settlement Class are: (1) the district and magistrate judges presiding over this case; (2) the judges of the Seventh Circuit; (3) the immediate families of the preceding person(s); (4) any Released Party; and (5) any Settlement Class Member who timely opts out.

228186

Class Member who declines to opt out. *Id.* at §§ II.30, XI.73. Checks issued to Settlement Class Members shall remain valid for 180 days from the date of their issuance. *Id.* at § XI.73. If, after the expiration date of the checks distributed, there remains money in the Settlement Fund sufficient to pay at least five dollars ($5.00) to each Settlement Class Member who cashed their initial check, those remaining funds will be distributed on a *pro rata* basis to those Settlement Class Members (the "Second Distribution"). *Id.* at § XI.74.

### 3. Prospective Relief.

The settlement agreement provides that within thirty (30) days following the entry of the preliminary approval order, ESO will permanently delete any data generated from the scan of any Settlement Class Member's finger in connection with the ePro BioClock which is hosted on servers leased or owned by ESO or will request that its customers do so directly. **App. 1** at §XVII.93. Further, with respect to individuals who used the BioClock in connection with their work at Elite, Plaintiff's employer, any data generated in connection with the scan of such individual's finger will not be deleted while Plaintiff's lawsuit against Elite is pending. Class Counsel will notify ESO's counsel when the Elite action is resolved and ESO has agreed to permanently delete any data generated from the scan of a finger within 30 days after such notice is provided or will request that Elite do so directly.

### 4. *Cy pres* distributions.

Only if a Second Distribution is not feasible or if there remains money after the Second Distribution will the money be donated to a *cy pres* beneficiary. In the preliminary approval order, the Court preliminarily approved the Parties' request that any such funds be sent, in equal amounts, to the following *cy pres* recipients: Electronic Privacy Information — an organization closely related to the privacy issues of this BIPA class — and Illinois Heart Rescue. *See Ira Holtzman,*

7

228186

*C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013) (*Cy pres* must directly or indirectly benefit the class members' interests.). The full class notice identified these organizations and no Settlement Class member objected. *See* **App. 2** (Geraci Decl.) at ¶¶ 9, 12**;** *id.* at **Exhibit B** (Website Notice), p.1.

> **5. Settlement Class release.**

In exchange for the benefits allowed under the Settlement, Settlement Class Members who do not opt out will provide a release tailored to the alleged claims and practices at issue in this case. Specifically, they will release "any and all claims, rights, demands, liabilities, lawsuits and/or causes of action of every nature and description, whether known or unknown, filed or unfiled, asserted or as of yet unasserted, existing or contingent, whether legal, statutory, equitable, or of any other type or form, whether under federal, state, or local law, and whether brought in an individual, representative, or any other capacity, of every nature and description whatsoever, including, but not limited to, claims that were or could have been brought in the Lawsuit or any other actions filed (or to be filed) by Plaintiff and Settlement Class Members against the Released Parties relating in any way to or connected with the alleged capture, collection, storage, possession, transmission, conversion, purchase, obtaining, sale, lease, profit from, disclosure, re-disclosure, dissemination, transmittal, conversion and/or other use of alleged biometric identifiers and/or biometric information through the latter of: (1) the date of Final Approval of Settlement or, (2) with respect to any Settlement Class Members for whom data stored on servers owned or leased by ESO is retained at the express request of Class Counsel during the pendency of the Elite Action, the date that such data is permanently deleted and destroyed pursuant to the process outlined [in the Settlement Agreement], including, but not limited to, claims under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*." *Id.* at § XII.76. Significantly, the Settlement

8

228186

expressly excludes any claims against ESO's customers that used the ePro BioClock in the State of Illinois. *Id.* at § XII.79. Thus, Plaintiff and Settlement Class Members may still pursue BIPA claims against their employers.

### 6. Class Representative Service Award.

The Agreement provided Plaintiff may petition the Court for a Service Award. **App. 1** (Agreement) at § V.57. There is no clear sailing provision as to this request, and neither Court approval nor the amount of the Service Award is a condition of the Settlement. *Id*. Given Plaintiff's role in prosecuting this action on behalf of the Settlement Class, Plaintiff has requested a Service Award of $10,000.00. ECF. No. 81 at 13-15. The Class Notice advised the Settlement Class of Plaintiff's request and there was no objection. *See* **App. 2** (Geraci Decl.) at ¶ 12**;** *id.* at **Ex. A** (Mail Notice); *id.* at **Ex. B** (Website Notice).

### 7. Attorneys' fees and costs.

Class Counsel has applied to the Court for an award of attorneys' fees and costs. *See* ECF No. 81. As addressed in Class Counsel's motion for attorneys' fees, courts in this Circuit commonly award approximately 36% plus reasonable expenses in common fund class settlements after settlement administration costs are deducted. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in consumer statutory class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million).

This amount is appropriate to compensate Class Counsel in this amount here for the work they have performed in procuring a settlement for the Settlement Class.

There was no clear sailing agreement on attorney fees and the Class Notice informed the Settlement Class Members that Class Counsel will seek 36% of the fund net administration costs and the exact dollar amount that equaled. *See* **App. 2** (Geraci Decl.) at **Ex. A** (Mail Notice), p.1

228186

("Plaintiff will petition for … Class Counsel's fees up to thirty-six (36) percent of the Settlement Fund after administrative costs have been subtracted, not to exceed $1,463,024.88, plus reasonable expenses."); *id.* at **Ex. B** (Website Notice), §7 (same). There were no objections to this request.

## II.   ARGUMENT

### A.  The settlement approval process.

Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class settlement if it is "fair, adequate, and reasonable, and not a product of collusion"  There is a presumption of fairness when a class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995).

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

228186

**B. The Settlement is Fair, Reasonable, Adequate, and Should be Approved.**

When deciding whether to grant final approval, Rule 23(e)(2) directs courts to consider whether: (1) the named plaintiff and class counsel have adequately represented the class; (2) the settlement resulted from arm's-length negotiations; (3) the settlement treats class members equally; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2).[7] Each of these factors supports approval.

### 1. The Class has been adequately represented.

This requirement is satisfied because plaintiff: (1) possesses an interest in the outcome of the case sufficient to ensure vigorous advocacy; (2) has no interest antagonistic to the class's; and (2) has retained qualified and competent counsel. *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006).

Plaintiff and the other Settlement Class Members are all individuals who used the ePro BioClock and share identical claims arising from a common course of conduct: ESO's allegedly unlawful collection and retention of their biometric data. To vindicate those claims, Plaintiff has vigorously prosecuted this action on behalf of the class by retaining counsel, assisting her attorneys in investigating the Settlement Class's BIPA claims, reviewing, and approving the Class Action Complaint prior to filing, regularly conferring with her attorneys throughout the litigation, and reviewing and approving the Agreement prior to signing it. *See* **App. 3** (Keogh Decl.) at ¶ 30.

---

[7] The factors to be considered under the 2018 amendment to Rule 23 "overlap with the factors articulated by the Seventh Circuit, which include: '(1) the strength of the case for plaintiffs on the merits, balanced against the extent of the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Rysewyk*, 2019 U.S. Dist. LEXIS 236004, at *12 (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)).

11

Further, Class Counsel have extensive experience in complex litigation and consumer class actions involving BIPA, as well as other statutory privacy claims, and have been found adequate and appointed class counsel in BIPA disputes and scores of cases arising under various other consumer protection statutes. *See id.* at ¶¶ 3-9. Drawing on this experience, Class Counsel were able to evaluate the merits of this case, ESO's defenses, the benefits of the proposed Settlement, and the risks of further litigation. *Id.* at ¶¶ 23-27.

Further, Class Counsel have vigorously pursued the class claims from the outset by investigating Plaintiff's claims, drafting, and filing a well-pled complaint, briefing a motion to stay, obtaining informal discovery into merits and class issues, and preparing a detailed mediation statement that spelled out Plaintiff's factual and legal theories. *See id.* at ¶¶ 10-16. These efforts culminated in a non-reversionary Settlement Fund that provides all Settlement Class Members with significant cash relief without the need to submit a claims form or other paperwork. As such, the Court should find the adequacy prong met.

### 2. The Settlement resulted from arm's length negotiations.

The Settlement is the result of extensive, arm's length negotiations between experienced attorneys, carried out during an all-day mediation session held before Judge Holderman (Ret.), followed by additional discussions among the Parties, including with the assistance of the mediator. *See* **App. 3** (Keogh Decl.) at ¶¶ 3-9, 17-18. After reaching an agreement in principal, the Parties spent the next seven months hashing out the remaining details of the Agreement before executing it in May 2024. *Id.* at ¶ 18.

The arms-length nature of the Parties' discussions is also borne out by the terms of the Settlement Agreement itself. The Settlement Agreement is non-reversionary, automatically provides significant cash payments to all members of the Settlement Class and lacks any provision

that could indicate fraud or collusion such as a "clear sailing" or "kicker" clause related to attorney's fees or the incentive award. *See Snyder v. Ocwen Loan Servicing, LLC,* No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926, at *15 (N.D. Ill. May 14, 2019) (granting preliminary approval where agreement lacked reversion clause, clear sailing clause, or other terms that suggest "something other than an arm's length negotiation"); *Aranda v. Caribbean Cruise Line, Inc.,* No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400, at *14 (N.D. Ill. Mar. 2, 2017) (same).

For all these reasons, the Court should find the Settlement here was the result of good-faith, arm's-length negotiations. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810, at *15-16 n.5, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting courts "presume the absence of fraud or collusion" absent evidence to contrary).

### 3. The proposed Settlement treats Settlement Class Members equally.

Here, each Settlement Class Member has identical BIPA claims against Defendant, which is why every Settlement Class Member is entitled to an equal, *pro rata* share of the Settlement Fund. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (equitable treatment is "assured by straightforward pro rata distribution of the limited fund"). Because there is no disparate treatment between members, the Settlement merits approval.

### 4. The relief provided to the Settlement Class is more than adequate.

Here, the gross recovery of approximately $639/net recovery of approximately $401[8] afforded by the Settlement is in line-with, if not superior to, the per-claimant recoveries obtained in analogous BIPA class actions that have received court approval. *See, e.g.*, *Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) (net recovery of $125 to $150

---

[8] Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

13

228186

per claimant); *Marshal v. Life Time Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cty. July 30, 2019) (net recovery of approximately $270 per claimant, as well as dark web monitoring valued at approximately $130.00 per claimant); *Prelipceanu v. Jumio Corp.*, 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) (net recovery of $262.28 per claimant); *Trotter v. Summit Staffing*, 2019-CH-02731 (Cir. Ct. Cook Cnty. Aug. 4, 2020) (net recovery of $102); *Kusinski v. ADP, LLC*, 2017-CH-12364 (Cook Cnty. Feb. 10, 2021) (net recovery of $250 per claimant); *O'Sullivan, et al. v. WAM Holdings, Inc., d/b/a All Star Management, Inc.*, 2019-CH-11575 (Cir. Ct. Cook Cnty. Sept. 2, 2021) (net recovery of $384.09); *Pelka v. Saren Restaurants Inc.*, 2019-CH-14664 (Cir. Ct. Cook Cnty. Apr. 9, 2021) (net recovery of $289 per claimant); *Sanchez v. Elite Labor Services d/b/a Elite Staffing, Inc. and Visual Pak Company*, No. 2018-CH-02651 (Cir. Ct. Cook Cnty. Aug. 10, 2021) (net recovery of $256-$510); *Sykes v. Clearstaff, Inc*., 2019-CH-03390 (Cir. Ct. Cook Cnty. Jan 5, 2021) (net recovery of $298.04).[9] The relief is even more appropriate in light of the fact that this claim was against a software company and preserved the claims against the class's various employers.

In sum, the relief provided by the proposed Settlement is more than adequate.

---

[9] Outside the realm of BIPA, the cash payments afforded by the Settlement Agreement dwarf the recoveries typically seen in privacy class actions, which often provide class members with little (if any) monetary relief. *See, e.g., Lane v. Facebook, Inc.,* 696 F.3d 811, 818 (9th Cir. 2012) (upholding settlement providing only $9.5 million in *cy pres* relief despite that statutory claims at issue provided for significant statutory damages); *In re Google LLC Street View Electronic Communications Litigation*, No. 3:10-md-02184, 2020 U.S. Dist. LEXIS 47928 (N.D. Cal. Mar. 18, 2020) (approving *cy pres* distribution of $13 million fund in case with 60 million person class (equating to $0.22 per person before fees, expenses, or administration costs).

228186

### a. The risks of continued litigation favor approval.

When evaluating the adequacy of class relief, a court should first compare the costs, risks, and delay of trial against the immediate benefits afforded by the proposed settlement. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment. This sub-factor weighs heavily in favor of approval because the proposed Settlement provides immediate relief to Settlement Class Members while avoiding potentially years of costly, complex litigation and appeals.

While Plaintiff remains confident in the strength of her claims, ESO denied and continues to deny all of her material allegations while raising myriad legal and factual defenses that, if successful, could preclude any recovery for the Class. For starters, ESO argued it faces no liability under BIPA because the finger-scan information allegedly captured in connection with the ePro BioClock does not fall within the statutory definition of "biometric identifiers" or "biometric information." *See* ECF No. 31 at 22. Defeating this highly technical defense would entail costly expert and third-party discovery. While Plaintiff is confident, she would prevail on this issue, the lack of any guiding precedent offers no guarantee of success at summary judgment or trial.

ESO also argued, among other things: (1) ESO is merely a passive technology vendor, and thus did not take an "active step" towards collecting and storing Plaintiff's and the Settlement Class's alleged biometric data; (2) the extraterritoriality doctrine barred Plaintiff's claim because any alleged biometric collection or storage on ESO's systems, if any, part took place outside of Illinois; (3) Plaintiff and the Settlement Class consented to any collection of their alleged biometric data (if any) and waived their claims under BIPA; and (4) Plaintiff's claims were barred because the data at issue falls within the healthcare exemption in Section 10 of the BIPA, as any alleged collection of their data was for healthcare treatment, payment, or operations as those terms are defined under HIPAA. A victory on these defenses could doom the case in its entirety or greatly

15

reduce the size of the proposed class. *See In re Southwest Airlines Voucher Litig.*, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval.").

Plaintiff would also need to prevail at class certification, which would entail extensive motion practice on several hotly contested issues with no guarantee of success. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment (directing courts to consider the likelihood of certification when evaluating this sub-factor). Though Plaintiff maintains this case is an ideal candidate for certification, her success is certainly not guaranteed.

Finally, even if Plaintiff prevailed at class certification and obtained a complete victory on the merits, ESO could seek a reduction of damages based on the argument an award of up to $1,000 or $5,000 per violation would violate its right to due process under the Illinois and United States Constitution. *See Cothron v. White Castle Sys.,* 2023 IL 128004, ¶ 42; *see also Rogers v. BNSF Ry. Co.,* 2023 U.S. Dist. LEXIS 113278, *30 (N.D. Ill. June 30, 2023) (vacating damage award and ordering new jury trial limited to damages).[10]

Taking these realities into account and recognizing the risks involved in any litigation, the monetary relief available to each Settlement Class Member represents a truly excellent result. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Settlement Class Members to receive immediate and certain relief. *See, e.g., Goldsmith*, 1995 U.S. Dist. LEXIS 15093, at *14-15 ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement

---

[10] Plaintiff respectfully disagrees damages should be left to the discretion of the jury as *Rogers* found, but instead subject to a Due Process analysis after judgment.

16

228186

allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). Thus, this sub-factor weighs in favor of approval.

### b. The proposed method of distribution is effective.

The next sub-factor analyzes whether the proposed method for distributing relief to the class is effective. Fed. R. Civ. P. 23(3)(2)(C)(ii). Effective distribution methods are those that "get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible" while ensuring "only legitimate claims" are paid. 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.).

Courts routinely find this factor satisfied where class members do not need to take any affirmative steps to receive their portion of the settlement. *See, e.g., Chambers v. Together Credit Union,* No. 19-CV-00842-SPM, 2021 U.S. Dist. LEXIS 92150, at *6-7 (S.D. Ill. May 14, 2021) ("The method of distributing the Net Settlement Fund is by direct payment, which is the best and most effective method of ensuring Class members receive the funds they are due and requires no claims to be submitted.").

The same result is warranted here. Settlement Class Members do not need to take any action to obtain their share of the class award. Instead, the Administrator will distribute each *pro rata* share of the Settlement Fund to them. This method of distribution supports final approval.

### c. The proposed attorney fee award and timing of payment.

The final sub-factor[11] analyzes the adequacy of the relief in light of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

---

[11] The fourth sub-factor directs courts to consider any side deals or separate agreements reached by the parties in connection with the settlement agreement. *See* Fed. R. Civ. P. 23(e)(2)(c)(iv); *id.* at § (e)(3). Because the Parties have reached no such agreement, *see* **App. 3** (Keogh Decl.) at ¶ 24, this factor does not factor into the analysis. *See, e.g., Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *20 (S.D. Ill. Dec. 13,

17

Here, the Agreement does not guarantee any set fee or clear sailing provisions. Instead, Class Counsel has filed a fee petition requesting the Court to approve a fee award of 36% of the Settlement Fund (excluding Administrative Expenses) — an amount less than Illinois courts routinely award[12] and in line with courts within the Seventh Circuit. *See Birchmeier supra at* 796-97 (7th Cir. 2018) (affirming 36% fee of the first $10 million.) *Sherman v. Brandt Industries USA Ltd.*, No. 1:20-cv-01185-MMM-JEH, ECF No. 85 (C.D. Ill. Sep. 15, 2020) (Mihm, J.) (36% of net common fund in BIPA dispute); *McAfee v. Hubbard*, No. 14-CV-1010-NJR-RJD, 2017 U.S. Dist. LEXIS 62676, at *11 (S.D. Ill. Apr. 25, 2017) (36% of total settlement fund); *Gaskill*, 160 F.3d at 362–63 (affirming award of 38%); *Kirchoff*, 786 F.2d at 323 (observing "40% is the customary fee in tort litigation").[13]

Regarding timing, Class Counsel filed their application on the date Notice was sent, which was immediately posted on the Settlement Website allowing Class Members to review or object. Further, the Notice mailed to the class advised the class of the exact amount of fees sought both as a percentage and dollar amount. *See* **App. 2** (Geraci Decl.) at **Ex. A,** p.1 ("Plaintiff will petition

---

2018) ("The parties have not identified, nor is the Court aware of, any agreement—other than the Settlement itself—that must be considered pursuant to Rule 23(e)(3). This factor is neutral.").

[12] *See Richardson v. Ikea North America Servs.*, No. 21-CH-5392 (Cir. Ct. Cook Cnty. 2023) (Conlon, J.) (awarding 40% (or $9,700,000) of $24,250,000 gross common fund); *Martin v. Safeway, Inc.*, 20-CH-5480 (Cir. Ct. Cook Cnty. 2022) (Reilly, J.) (awarding 40% (or $8,000,000) of $20,000,000 gross common fund); *Donahue v. Everi Holdings, Inc.*, No. 2018-CH-15419 (Cir. Ct. Cook Cnty. Dec. 3, 2020) (Atkins, J.) (same); *Marquez v. Bobak Sausage Co.*, No. 2020-CH-4259 (Cir. Ct. Cook Cnty. Aug. 21, 2023) (Reilly, J.) (same for BIPA class); *Sekura v. L.A. Tan Enters.*, No. 2015-CH-1664 (Cir. Ct. Cook Cnty. Dec. 1, 2016) (Garcia, J.) (same); *Svagdis v. Alro Steel Corp.*, No. 2017-CH-12566 (Cir. Ct. Cook Cnty. Jan. 14, 2019) (Larsen, J.) (same); *Zhirovetskiy v. Zayo Group, LLC*, No. 2017-CH-09323 (Cir. Ct. Cook Cnty. Apr. 8, 2019) (Flynn, J.) (same); *McGee v. LSC Comms., Inc.*, No. 2017-CH-12818 (Cir. Ct. Cook Cnty. Aug. 7, 2019) (Atkins, J.) (same).

[13] *See Guzman v. National Packaging Services Corp.*, No. 19-cv-1722-pp, 2022 U.S. Dist. LEXIS 120514, at *14-15 (E.D. Wis. July 8, 2022) (36%); *Legg v. PTZ Ins. Agency, Ltd, et al.*, No. 14-cv-10043, ECF No. 469 (N.D. Ill. Oct. 31, 2019) (same); *Gebka v. Allstate Corp.*, Case No. 19cv6662, ECF No. 145 (N.D. Ill. Sep. 27, 2022) (same).

228186

for … Class Counsel's fees up to thirty-six (36) percent of the Settlement Fund after administrative costs have been subtracted, not to exceed $1,463,024.88, plus reasonable expenses."); *id.* at **Ex. B**, §7 (same). No class member has objected to the requested fees. *See* **App. 2** (Geraci Decl.), ¶ 12.

Similarly, Plaintiff has petitioned for a $10,000 service award for her role in this litigation, which was crucial. Though no award of any sort was promised to Plaintiff at any time, she nevertheless sacrificed her time to prosecute this case on behalf of the class who used ESO's ePro BioClock, exhibiting a willingness to participate in this case and undertake the responsibilities and risks attendant to bringing a class action. *See* **App. 3** (Keogh Decl.) at ¶ 30. Plaintiff participated in the initial investigation of her claims, provided information to Class Counsel to aid in preparing the initial pleadings, and reviewed the initial pleadings prior to filing. *Id.* In addition, Plaintiff regularly consulted with Class Counsel, and analyzed and approved the Settlement. *Id.*

Moreover, the $10,000 Service Award sought here is comparable to or less than others approved by Illinois state and federal courts in similar BIPA or class actions. *See, e.g., Hale,* 2018 U.S. Dist. LEXIS 210368, at *50 (S.D. Ill. Dec. 13, 2018) (awarding $25,000 incentive award in settlement involving RICO and unjust enrichment claims);[14] Once again, no class member objected to this request and the requested service award of $10,000 is reasonable. *See* **App. 2** (Geraci Decl.), ¶ 12.

Thus, the fees and expenses sought are fair, reasonable and support approval.

---

[14] *Rapai v. Hyatt Corp.*, No. 2017-CH-14483 (Cir. Ct. Cook Cty. Jan. 26, 2022) (awarding $12,500 incentive award to BIPA class representative); *Spano v. Boeing Co.*, No. 06-CV-743-NJR-DGW, 2016 U.S. Dist. LEXIS 161078, at *13 (S.D. Ill. Mar. 31, 2016) (awarding $25,000 to two class representatives and $10,000 to a third in ERISA settlement); *Beesley v. Int'l Paper Co.,* No. 3:06-cv-703-DRH-CJP, 2014 U.S. Dist. LEXIS 12037, at *13 (S.D. Ill. Jan. 31, 2014) (awarding $25,000 and $15,000 in ERISA settlement); *Will v. General Dynamics Corp.*, No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *12 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs in ERISA settlement).

19

## IV.    CONCLUSION

This Settlement provides substantial benefits for all Settlement Class Members without the need to submit a claim, it was negotiated at arm's length by experienced counsel with the assistance of Judge Holdeman (ret.) after sufficient discovery and litigation, and there are no objections to any portion of the Settlement.  Thus, it easily falls within the range of possible approval.

For all of the foregoing reasons, Plaintiff respectfully requests the Court:

(1) Grant final approval;

(2) Dismiss the Action with prejudice and without costs except as explicitly provided for in the Settlement Agreement, while retaining jurisdiction solely to supervise the administration of the Settlement, enforce the Agreement, and resolve and disputes relating to the same;

(3) Certify the Settlement Class for purposes of effectuating the terms of the Settlement;

(4) Finds that the Agreement is fair, reasonable, and adequate, was entered into in good faith and without collusion, and approves and directs the consummation of the Settlement Agreement;

(5) Approve the Release provided in the Settlement Agreement and orders that the Released Claims will be released as to the Released Parties;

(6) Enter final judgment with respect to the foregoing;

(7) Grant Class Counsel's request for an award of attorneys' fees equal to $1,463,024.88, which represents thirty-six percent of the Settlement after administration costs are deducted, plus $16,412.62 in out-of-pocket expenses they incurred litigating the case for the class; and

(8) Grant Plaintiff a class representative service award in the amount of $10,000.

The draft order for Final Approval attached to the Settlement Agreement is also attached as **Appendix 4.**

228186

20

Dated: January 7, 2025                  Respectfully submitted,

**KELSEY HIRMER, individually and on behalf of all others similarly situated,**

By: _/s/ Gregg M. Barbakoff_
      Keith J. Keogh
      Gregg M. Barbakoff
      KEOGH LAW, LTD.
      55 W. Monroe St., Suite 3390
      Chicago, Illinois 60603
      Tel.: (312) 726-1092
      Fax: (312) 726-1093
      keith@keoghlaw.com
      gbarbakoff@keoghlaw.com

*Attorneys for Plaintiff and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that, on **January 7, 2025**, I caused a copy of the foregoing document, along with any attached exhibits, to be served upon all counsel of record via electronic filing using the CM/ECF system.

                                                 /s/ Gregg M. Barbakoff